## TURMAN v. BELL.

### Decided February 28, 1891.

1. *Mortgage foreclosure—Parties.*
   The estoppel of a grantor of an absolute deed, retaining an unrecorded de
   feasance, as to a mortgagee of his grantee without notice of his equities,
   operates only to postpone his rights to the lien of the mortgagee, and does
   not extinguish them, nor authorize a foreclosure of them by a suit to which
   he was not a party.

2. *Subrogation—Purchase at mortgage sale.*
   A purchaser at a foreclosure sale succeeds to all the rights of the holder of
   the mortgage foreclosed.

3. *Priorities—Notice.*
   A mortgagee with notice that the mortgagor holds as security can enforce
   his lien only to the extent of the mortgagor's claim against his grantor;
   but if he took without notice, he can collect the entire mortgage debt.

4. *Withdrawal of unrecorded deed—Negligence.*
   The rule that the holder of a deed has done all that is necessary under the
   registry laws to give notice of its contents when he files it for record
   and that the subsequent misconduct or neglect of the recorder cannot
   prejudice his rights, is subject to the qualification that where he carelessly
   takes it from the recorder's office before it is recorded and without noticing
   that it contains no certificate of record, a subsequent *bona fide* purchaser
   will be protected. *Oats* v. *Walls*, 28 Ark., 244, qualified.

5. *Warranty deed—Possession of grantor—Notice of equities.*
   Where a vendor of agricultural land continued openly and notoriously in pos-
   session of the premises six months after the execution of a warranty deed,
   and after the time when such lands were usually entered upon for the next
   season's cultivation, his possession was sufficient to put a subsequent pur-
   chaser upon notice of his equities, unless such vendor, either expressly or
   by a recognized course of dealing, held out his vendee as authorized to
   convey.

6. *Equity—New trial.*
   An equity cause will be remanded for a new trial when both parties have
   without fault omitted to introduce testimony upon a material point.

7. *Cross-complaint—Service on co-defendant.*
   Judgment should not be rendered on a cross-complaint against a co-defendant
   who has not been summoned or warned to appear and who has not ap-
   peared.

APPEAL from *Scott* Circuit Court in Chancery.

JOHN S. LITTLE, Judge.

S C—18

Suit to remove cloud upon title. Turman conveyed the land to Gilbreath in 1884 as security for a loan, and took a deed of defeasance. Gilbreath in 1885 mortgaged the land to the National Bank of Western Arkansas. The bank brought suit to foreclose the lien without making Turman a party. Plaintiffs, Bell and others, purchased at the foreclosure sale. In 1888 they brought this suit to cancel Turman's deed of defeasance as a cloud upon their title, making Gilbreath's administrator, Forrester, a party. Turman filed a cross-complaint, asking to redeem the land upon payment of the amount of the debt due by him to Gilbreath's estate. No summons was issued upon the cross-complaint for the co-defendant, Forrester, nor did he enter his appearance. Upon the pleadings and evidence the court dismissed the cross-complaint, and decreed that Turman's deed be canceled. Turman appealed.

The facts are stated in the opinion.

*J. M. Moore, Geo. H. Sanders* and *T. P. Winchester* for appellant.

*L. P. Sandels* and *C. E. Warner* for appellees.

1. Supposing that Turman did file the deed for record, were his acts in that behalf sufficient? 28 Ark., 244.

2. In view of the facts proven they were not. He placed Gilbreath in a position to perpetrate a wrong upon others.

3. A person is presumed to know the exact state of his title, and ignorance will not help him. And, in invoking the doctrine of estoppel, it does not matter whether Turman knew or not that his defeasance was not of record. 1 Johns. Chy., 344, 351, top; 129 Mass., 380; 7 Cr., 20; 2 Pom. Eq., sec. 731, and note 3, and sec. 821; 6 A. & E., p. 115; 3 Wash. R. P., 109–10; Bigelow on Estoppel, pp. 544 *et seq.;* 6 Johns. Chy., 166; 18 Ark., 142; 24 *id.*, 399; 93 Ind., 575; 51 N. H., 297.

4. Were appellees *bona fide* purchasers? They were if the bank was. A mortgagee is a *bona fide* purchaser. 49 Ark., 214. If Turman could not have set up his claim

against the bank, he cannot set it up as against appellees. 2 Pom. Eq., secs. 754, 724; 1 Story, Eq., sec. 409; 78 Mo., 458; 11 Ark., 137.

HEMINGWAY, J. As a general rule, no person can be affected by any judicial proceeding to which he is not a party; and a judgment takes effect only between the parties, and gives no rights to or against third persons. Freeman on Judg., sec. 154. So a foreclosure is effectual against only those persons interested in the equity who were parties; and while the foreclosure of a paramount lien conveys title, it is subject to the right of redemption of junior incumbrancers who were not parties to the proceeding. 2 Jones on Mort., sec. 1395. In this case the parties have treated the transactions between Gilbreath and Turman as a mortgage, and we think properly. Turman was therefore the equitable owner of the land, and Gilbreath held the legal title only by way of security. The mortgagees of Gilbreath could not therefore foreclose Turman's equity of redemption in a suit to which he was not a party.

It is argued that Turman is estopped to assert his equities against the bank, the mortgagee of Gilbreath, because he permitted the bank to take its mortgage and kept his equities hidden. If the fact be as alleged, the estoppel would only operate to postpone the rights of Turman to the lien of the bank. It would not extinguish his rights or authorize the bank to foreclose them by a suit to which he was a stranger.

It is further argued that he is estopped to assert his equities against the plaintiffs, purchasers at the foreclosure sale, because he permitted them to purchase without disclosing his interest. This contention, we think, rests upon no basis of fact. Before the sale under the decree he filed with the recorder and had recorded Gilbreath's deed of defeasance, and that gave notice of his rights under it to all persons dealing with the property. Moreover he was present at the sale, and before the land was offered he gave notice of his

1. Parties necessary to mortgage foreclosure.

equities to all persons in attendance. It is true that there is a conflict of evidence as to the latter fact, but we think the fair preponderance sustains our statement. He testified positively that he gave the notice by reading a paper which he had previously prepared. To strengthen his statement, he produced the paper and incorporated it in his testimony. His narrative is either true or corruptly false; for, if he in fact did not give the notice, he could not believe that he had given it, or innocently produce as a paper read one which in fact he had not read. He is corroborated in his statement by a number of witnesses. On the other side several witnesses testified that they heard him read no such notice, and one testified that he did not read it. They may be honest, and nevertheless Turman's statement may be true. That he read one notice all agree; and it may be that, although he read another, these witnesses failed to observe that the reading included more than one paper. Or, as several years intervened between the day of sale and that of testifying, they may not have recalled on the latter date all that they observed on the former.

So we hold that Turman had an interest in the property of which he could not be deprived by a foreclosure to which he was a stranger, and that he is not estopped to assert it in a proceeding to redeem from the purchaser under the foreclosure.

2. Subrogation.     Upon what terms is he entitled to redeem? In approaching that question it may be well to say that the plaintiffs, as purchasers at the foreclosure sale, succeeded to all the rights of the bank as holder of the mortgage foreclosed. 2 Jones on Mort., sec. 1395, and cases cited. What those rights were as against Turman, we shall now proceed to consider.

3. Notice of prior lien.     If the bank took the mortgage with notice that Gilbreath held the lands only by way of security and that the equitable title was in Turman, then the rights conferred by the mortgage could not be greater as against Turman than Gilbreath actually held. If, on the contrary, Turman in-

vested Gilbreath with the legal title to the land and clothed him with the indicia of absolute ownership, and the bank took its mortgage without notice of his qualified rights, then Turman cannot set up his claim to prejudice the collection of its mortgage debt. That does not imply that Turman may not set up his right to redeem as against the mortgage, but only that he cannot set it up so as to prejudice or defeat the collection of the claim secured. We hold that if the bank took the mortgage with the notice of Turman's rights, it can collect from the land no more than Gilbreath could; but if it took without notice, it can collect the entire amount due on its mortgage.

Turman contends that the bank took with notice given, first, by the filing of the instrument of defeasance for record, and, second, by his open and notorious possession of the land continued from the time that Gilbreath received his deed until the bringing of this suit.

The facts as bearing upon the alleged notice by registry are: that on the day the defeasance was executed—being about one month after the execution of the deed—Turman left it with the recorder of the county to be recorded, and it was then indorsed by the recorder as filed for record. Some time afterwards (the date cannot be definitely fixed from the proof) Turman called for the defeasance, and it was delivered to him by the recorder. It had not been recorded, and there was attached to it no certificate of the recorder that it had been. Subsequently, after having made a search of the records which failed to discover the defeasance, the bank took its mortgage. It appears that the bank had no knowledge of the defeasance. Turman believed that it had been recorded, and did not discover his mistake until after the bank obtained the decree of foreclosure. Upon these facts it is contended that notice of the defeasance was given from the time it was filed for record. That contention is supported by the decision of this court in the case of *Oats* v. *Walls,* 28 Ark., 244 ; and if it is to be followed without limitation, it is decisive of this case. In the opinion in

4. Negligent withdrawal of unrecorded deed.

that case the court used the following language : " In this. case, Oats took his deed to the proper office, placed it in the hands of the person there in charge, and paid the fees for recording—this was all he was required to do. And any acts thereafter to be done to perfect the record and make the notice full to all subsequent purchasers, etc., devolved upon the clerk, and could not operate to the prejudice of the mortgagee."

That the holder of the deed has done all that is necessary under our registry laws to give notice of its contents when he files it for record and that the subsequent misconduct or neglect of the recorder cannot prejudice his rights, is the established law. But while such holder is exempt from prejudice by the misconduct or neglect of the clerk, we do not think the exemption should extend to his own acts that through design or negligence affect others. If A should file a deed to be recorded, and the recorder should so indorse it, and A should immediately take it out of the office, it would not be contended that such filing imparted any notice. Suppose that A, instead of taking the deed immediately after it is indorsed by the officer, should remain long enough in the office for the officer to record it, and should then take it out, knowing that it had not been recorded, would any one contend that such filing imparted notice to subsequent purchasers from A's grantor? If not, then if A took the deed out of the recorder's office without knowing whether it had been recorded or not, and when he might have known, by examining it for a recorder's certificate, that it had not been recorded, can he insist that such filing imparts notice to subsequent *bona fide* purchasers? The statute requires, when a deed has been recorded, that the recorder attach to it a certificate of the fact of record. When the owner takes a deed from the recorder's office, he can easily ascertain either that the certificate is or is not attached ; and if it is not, he has no right to conclude that the deed has been recorded or to remove it from file. If he remove his deed before it is recorded, he places it in

the power of the grantor to exhibit a clear title and thus to mislead and deceive subsequent purchasers. By the exercise of slight care and caution he could have averted such a possibility; but if he fails to do it, persons ignorant of the deed, who have examined the records, may be induced to purchase, when they have exhausted all usual means of inquiry and information. If they do thus purchase, a loss must be borne. Where should it fall? Upon him whose care and caution could not prevent it, or upon him whose slight care and caution would have prevented it? The question implies its own answer. The party whose negligence made the loss possible should bear it, and should be estopped to set up his prior right against the party without fault.

The doctrine of constructive notice by registration rests upon the idea that all persons may learn and actually know that of which the law gives notice and implies knowledge; and it would contravene every principle of right and fair dealing to permit one to insist upon this constructive notice and claim the benefit of this implied knowledge, when his act had made such knowledge unattainable. We do not think the filing gave the bank notice of Turman's defeasance.

These are our views, after a careful and serious consideration of *Oats* v. *Walls*, 28 Ark, *supra*. The cases cited in support of that case have been examined and scrutinized by us, and do not conflict with the views herein expressed. In them it was held that where the holder of a deed filed it for record, and subsequent adverse interests were created before it was recorded, the notice was complete by the filing; but they were cases in which the failure to record was due to the delay of the recorder, the loss or destruction of the deed, or its abstraction from the files; in none of them did there enter the element of the owner's misconduct, either wilful or negligent. In so far as that case holds that a deed is notice of its provisions from the time it is filed for record and that the effect of such notice can not be impaired by the misconduct of the officer, it is approved; but in so far as it holds

that the notice continues as against those who in good faith and for value acquire adverse interests after the deed, unrecorded and without a certificate of record, is withdrawn from the files, it is overruled.

**5. Possession of grantor is notice of equities reserved when.** Turman continued in the possession of the lands from the date of his deed to Gilbreath in August, 1884, until the execution of the mortgage to the bank in February, 1885— in fact, until the trial of this cause in the court below; and it is contended that this gave notice of all his rights. As a general rule the possession of land gives notice to all the world of the rights of the occupant, when there is no record evidence of his right of possession; but to this rule there are well-established exceptions. Whether the continuing possession of a grantor, after he has executed a deed of general warranty, comes within the rule or its exceptions, was suggested but not decided by this court in the case of *Gill* v. *Hardin*, 48 Ark., 409. We know of no other case in which the question has been alluded to by this court. Between the appellate courts of other States there is an irreconcilable conflict of ruling, and upon either side are to be found courts of the highest authority.

Those that sustain the application of the rule say that, by the terms of the deed, the grantor has not the right of possession, and that his continuing possession gives notice that he has rights reserved not expressed in the deed; that, inasmuch as the records disclose no right of possession, it is but reasonable to conclude that the continuing possession rests upon some right not disclosed by the records, and that the reasonableness of such conclusion imposes upon persons about to deal with the land the duty to make inquiry. *Illinois Central R. Co.* v. *McCullough*, 59 Ill., 166; *Daubenspeck* v. *Platt*, 22 Cal., 330; *New* v. *Wheaton*, 24 Minn., 406; *Hopkins* v. *Garrard*, 7 B. Mon., 312; *Webster* v. *Maddox*, 6 Me., 256; *Seymour* v. *McKinstry*, 106 N. Y., 230; *Wright* v *Bates*, 13 Vt., 341.

On the other side it is said that the execution of a warranty deed without reservation is a most solemn declara-

tion by the grantor that he has parted with all his rights in the property, and directly negatives the reservation of any right. That those who see the deed are warranted in relying upon such declaration as much as if it had been made to them orally upon an inquiry, and that if they acquire interests in faith of such reliance, the grantor in possession will be estopped to assert any right secretly reserved from the grant. That as the grantor has declared that he parted with his entire estate, strangers about to deal with the property would reasonably refer his continuous possession to the sufferance of the grantee, and would not reasonably think to refer it to a reserved right. *Eylar* v. *Eylar*, 60 Tex., 315 ; *Van Keuren* v. *Central R. Co.*, 38 N. J. L., 165 ; *Scott* v. *Gallagher*, 14 S. & R., 333 ; *Jaques* v. *Weeks*, 7 Watts, 261 ; *Koon* v. *Tramel*, 32 N. W. Rep., 243 ; *Bloomer* v. *Henderson*, 8 Mich., 404.

If the possession has continued after the making of the deed but a short time, it might be reasonably referred to the sufferance of the grantee ; but where it was long continued, it would much more strongly imply a right in the occupant, and the implication would be sufficient to cast upon strangers the duty of inquiry. Where the lands were used for agriculture and sold during a crop season, it would not be reasonable to presume that the grantee would permit the grantor to hold by sufferance after the time when lands were usually entered upon for the purpose of the next year's cultivation ; and possession continued after that time could not be explained upon the presumption of sufferance.

We think, with all deference to those who deny the application of the rule in such cases, that the controlling fact upon which their argument proceeds is assumed. Ordinarily the terms of a general warranty deed import a declaration that the grantor has reserved no rights in the subject of the grant, and by themselves may always bear such implication. But possession is ordinarily notice of a claim of right ; and where a grantor continues in possession at the time of the grant and for a considerable time there-

after, should not the fact of possession be construed as an assertion of reserved rights, and as a limitation upon the provisions of the deed ? True, the deed alone denies the reservation of equities, but it denies equally the right to continue in possession. If the grantor then holds open possession against the terms of his deed, is it not a reasonable implication that he has rights not expressed in it ? If possession thus qualifies the terms of the deed, and it is open and continued, then the doctrine of estoppel cannot apply, for the grantor may as well expect persons to take notice of his possession as of his deed. We conclude that open and notorious possession of the lands by Turman from the date of his deed till the date of the bank's mortgage would give notice to the bank. But such notice only imposes a duty to make inquiry as to the rights of the occupant; and if he explain his possession in consonance with the right of his grantee to convey, he cannot attack the conveyances of the latter. If Turman held out Gilbreath as authorized to convey the land, either expressly or by a recognized course of dealing, then the bank would have been warranted in treating Turman's possession as in subordination to Gilbreath's right to convey, and would not be prejudiced by the notice.

6. When equity will remand for new trial.

It appears in a general and indefinite way that Gilbreath made sales of portions of the property conveyed to him by Turman, but the evidence does not disclose the dates or circumstances thereof; and we cannot determine what effect they should have upon the notice by possession. Moreover, the parties directed their attention to the development of the facts with reference to the filing and withdrawing from file of the instrument of defeasance, and did not fully develop the facts relative to Turman's continued possession. They treated the case of *Oats* v. *Walls,* 28 Ark., *supra,* as settling the law of notice by registry, and limited their evidence to the good faith of Turman in withdrawing his unrecorded defeasance from the files. Justice demands

that further proof be permitted to supply the omission as to the matters above indicated.

It is contended, and the record contains suggestions, that Turman received a part of the money secured by the bank mortgage, in addition to the amount he owed Gilbreath; if so, he can redeem only by paying it as well as his original debt. But if the mortgage represented money borrowed by Gilbreath for his own use, or for the purpose of discharging debts of Turman which he was bound by the terms of his agreement with Turman to pay, then the amount charged on the land in favor of plaintiffs should be credited on Turman's debt to Gilbreath.

It does not appear that Gilbreath's administrator was made a party to Turman's cross-complaint, or that he appeared to it. In order that the rights of the parties may be fully adjudicated, he should be made a party.

7. Service of process upon filing of cross bill.

We do not usually remand an equity cause for a new trial; but we should vary the practice where it is obvious that a cause cannot be otherwise intelligently determined, and such condition exists without fault of the parties. We therefore reverse the judgment for the reasons indicated, and remand the cause for further proceedings and retrial.