## RUBEL *v*. PARKER.

### Opinion delivered March 10, 1913.

1. ADVERSE POSSESSION—POSSESSION AS NOTICE.—Although actual possession is evidence of some title in the possessor, and puts a purchaser or mortgagee on notice as to the title which the occupant holds or claims in the property, still, the mere residence of a little girl, in the family of her uncle, will not put a mortgagee on notice of any equities she may have in the lands on which she and her uncle are living, the lands being mortgaged by the uncle. (Page 320.)

2. ADVERSE POSSESSION—POSSESSION AS NOTICE TO MORTGAGEE.—A child living with her uncle and his family, the uncle being in the open, actual and visible possession of the lands claiming to be the owner under a recorded deed, is not in such actual, visible and exclusive possession of such premises under a claim of right as to compel a mortgagee to take notice of the equities or claims of the person in possession. (Page 320.)

3. MORTGAGES—INNOCENT PURCHASER FOR VALUE.—Where an infant is defrauded by her uncle, who secures for himself a record title to

lands properly belonging to her, the lands will be charged as against her claim, with a mortgage taken on the land by a mortgagee who loans money on the same to the uncle, for value, without notice of the equitable rights of the infant. (Page 320.)

4. MORTGAGES—INNOCENT PURCHASER FOR VALUE.—No one can occupy in a court of equity higher ground than an innocent purchaser for value without notice. So, a mortgagee who occupies the position of an innocent purchaser for value without notice, is entitled to the amount of his loan out of the property securing the same, as against the actual owner, who has been defrauded out of the property by the mortgagor. (Page 321.)

Appeal from Lonoke Chancery Court; *J. E. Martineau,* Chancellor; reversed.

### STATEMENT BY THE COURT.

Appellee brought suit by her next friend, alleging that she was the only child of Joseph Parker, deceased. That prior to his death he purchased the quarter section of land in controversy, describing it, executed eight promissory notes for the sum of fifty dollars each, in payment therefor, and received a bond for title from the owner, Ed Bell, and was delivered possession of the land. That he moved on to the premises and occupied same as his homestead until his death, during which time he paid off all the notes, except one and a half, owing at the time of his death seventy-five dollars. the balance of the purchase money. That John J. Parker, her uncle, immediately took possession of the premises and all the personal property of her father, converted same to his own use and told her grandfather, when he protested against his doing so that he had been appointed guardian by the probate court and had the right to the custody of the child and the decedent's estate. That he sold and converted all of the property to his own use, except the $75 which he paid to Ed. Bell; that he falsely represented to Ed. Bell, the maker of the title bond, that he was the sole heir of Joseph Parker and entitled to his property, and upon the payment of the balance of the purchase money due, Ed. Bell conveyed the lands to the said John J. Parker, by his warranty deed. Alleged further that on the 8th day of July, 1905,

Parker and his wife executed a trust deed upon the land to Ike May, as trustee, to secure an indebtedness of $200 to A. Rubel; that Parker continued to occupy the premises until his death, leaving surviving him a widow and children and heirs, naming them. Prayer was that the deed executed by Bell to J. J. Parker, conveying the lands, be cancelled, and the trust deed from Parker and wife to Ike May, trustee, also, and the title be divested out of defendants and invested in her.

Rubel answered, denying the allegations of the complaint, admitting the execution of the trust deed from Parker and his wife to Ike May, as trustee, to secure the payment of the $200 loaned by him, and alleged that in January, 1903, the said Ed. Bell conveyed the lands by warranty deed to J. J. Parker, which deed was duly recorded; that Parker was seized in fee and in possession of the land, claiming to be the owner thereof under said deed of July 8, 1903, when the money was loaned by him and the deed of trust to secure the payment thereof made. That he had no notice of any claim or interest in the land, or that the same had ever been conveyed by ᵀᴰd. Bell by bond for title to Joseph Parker, and that there was nothing of record to indicate that any one other than John Parker had any interest in the land. That he in good faith loaned the money to him for the security for which the trust deed was taken and claimed to be an innocent purchaser and entitled to protection as such purchaser. Prayed that the land be charged with the payment of the $200 and interest and waived any further claim or right under the trust deed.

The testimony shows that Ed. Bell sold the land to Joseph Parker, and made him a contract for the conveyance thereof, or a bond for title and delivered possession to him and took his notes for the purchase money. That he had paid all of the purchase money, except $75 during his life. After his death John Parker moved on the place and claimed to be holding it as the only heir of Joseph Parker, under the agreement or contract of sale, and paid the balance of the purchase money due

after his brother's death, and Bell executed a warranty deed, conveying the title to him. It was also shown that Joseph Parker bought the lands and went into possession of same under bond for title. That he lived there with his sister and appellee, after his wife's death, until January 31, 1903, the time of his death, at which time there was a balance of $75 due on the land. John Parker moved on the place with his family, took charge of it and the personal property of his brother and the little girl and paid the balance of the purchase money to Ed. Bell and procured conveyance of the lands to himself by warranty deed from Ed. Bell, upon the representation that he was the only heir of his deceased brother, telling the child's grandfather at the time that he had papers from the probate court to take charge of that and that he was going to pay the land out and keep it for Joe's daughter. The bond for title to Joseph Parker was never placed of record, and the deed from Bell to John Parker was recorded after the execution thereof.

Rubel testified that he loaned the money to John Parker on July 5, 1905, and that the deed of trust was given to secure the payment thereof; that he had no information whatever, that John Parker was not the owner of the land as he claimed to be and as the records showed him to be, until a year or two after the loan was made and the trust deed executed. That he then heard that Joseph Parker had purchased the land and left at his death surviving him the appellee herein. That he went to John Parker about this report and was told by Parker that it was true his brother had purchased the land, but that he had not paid anything on it and had no papers to show for it, and that he had paid for the lands and that they had been conveyed to him by the deed which was recorded. He also said he had not seen the deed of conveyance at the time he loaned the money in 1905, but that it was recorded in 1904, but he had no intimation at the time that John Parker did not own the lands, as he claimed to, and that later when he heard that Joe had purchased the lands and died, leaving this

little girl, that he examined the records and found that there was nothing of record to show that Joe Parker had ever owned the lands, or had any claim whatever against them. He later loaned John Parker another $150 and took a mortgage upon some personal property to secure it. Thereafter, he was paid the sum of $50 rent for the lands in controversy, for one year and ten and fifteen dollars in money, which he applied upon the note secured by the personal property, not being directed by Parker to place the credit otherwise. He did not attempt to foreclose the deed of trust until after John Parker died, claiming that all the time Parker was agreeing to pay it and he thought he would do so.

The court decreed the cancellation of both the deed from Ed. Bell to John Parker, and his deed of trust to Ike May, securing the loan to Rubel, vested the title to the lands in appellee and adjudged costs against Rubel, from which decree he appealed.

*Geo. M. Chapline,* for appellant.

An innocent purchaser is always protected. 4 Ark. 301. A mortgagee who takes his mortgage without notice of prior equities occupies the position of a *bona fide* purchaser and is entitled to the protection afforded such a purchaser by a court of equity. 14 Am. & Eng. Enc. of L. (2 ed.) 288; 23 *Id.* 476, and cases cited.

As between appellant and the infant appellee, the equities being at least equal, the law should prevail. 23 Am. & Eng. Enc. of L. (2 ed.) 475.

*Trimble & Trimble,* for appellee.

Actual possession of land by a vendee under bond for title is sufficient notice of his title, relieving him of the necessity of filing his bond for record as protection against subsequent purchasers. 66 Ark. 167. See also 58 Ark. 85; 2 Pomeroy, Eq., 539.

Where there are equal equities the first in time prevails. Snell, Principles of Equity, 20.

Kirby, J., (after stating the facts). It is insisted for appellee that she was a minor and in the actual posses-

sion of the lands at the time of the execution of the deed of trust thereon to secure the payment of the loan to A. Rubel, and that he could not be an innocent purchaser thereof, since the law requires him to take notice of her equities therein.

It is not disputed that her father purchased the lands and went into possession thereof under bond for title from Bell; that he died in such possession, leaving appellee surviving him, still occupying the lands; neither is it disputed that John J. Parker, her uncle, immediately thereafter with his family took possession of the premises, and that the infant, appellee, continued to live in the house with him and that Parker procured the conveyance of the lands from Ed. Bell to himself by warranty deed, upon the payment of the balance of the purchase money under the contract of sale made to appellee's father, Joseph Parker. This deed was placed of record and thereafter appellant made the loan to John Parker, taking as security therefor the deed of trust upon the lands. There was no testimony indicating that he had any knowledge or information whatever, that appellee had any equity in the land conveyed in the deed of trust. Under such circumstances, does the law make him take notice of her rights and equities?

In American Building & Loan Association v. Warren, 101 Ark. 169, this court said:

"Ordinarily, possession by a person under a contract of purchase, although unrecorded, is notice of his equitable rights and interests in the property. Actual possession is evidence of some title in the possessor, and puts the subsequent purchaser or mortgagee on notice, as to the title which the occupant holds or claims in the property.

"Generally actual, visible, exclusive possession is notice to the world of the title and interest of the possessor in the property and it is incumbent upon the subsequent purchaser or mortgagee to make diligent inquiry to learn the nature of the interest and claim of such possessor, and if he does not do so, notice thereof will be

imputed to him. *Hamilton* v. *Fowlkes,* 16 Ark. 340; *Shinn* v. *Taylor,* 28 Ark. 523; *Rockafellow* v. *Oliver,* 41 Ark. 169; *Atkinson* v. *Ward,* 47 Ark. 537; *Strauss* v. *White,* 66 · Ark. 167; *Talheimer* v. *Lockhert,* 76 Ark. 26; *Sproull* v. *Miles,* 82 Ark. 455; *Hugh Bros.* v. *Redus,* 90 Ark. 149; 1 Jones on Mortgages (6 ed.), § 589.''

It is true appellee lived in the house with her uncle, John J. Parker, at the time of the execution of this deed of trust and that she had succeeded to the rights of her father, who died in possession of the premises under the title bond executed by Ed. Bell, but such occupancy can not be regarded as possession, which, under the law, would require the purchaser or mortgagee to take notice of any equities she might have in the land. 39 Cyc. 1766cc;*L endley* v. *Martindale,* 78 Iowa 379, 43 N. W. 233; *Rankin* v. *Coar,* 46 N. J. Eq. 566; 22 Atl. 177; 11 L. R. A. 661. She was but a small girl, living in the house with her uncle and his family, who was in the actual, open, visible possession of the lands, claiming to be the owner thereof under a deed of conveyance of record, showing him to be such owner. It can not be said that she was in the actual visible and exclusive possession of such premises under a claim of right which compels the purchaser or mortgagee to take notice of the equities or claims of the person in possession. If appellant had even been upon the premises and seen the family of John Parker, it would not have occurred to him as a prudent person to inquire if the infant girl was his own or the child of his brother living with the family, and certainly it could not have occurred to him that she was in the possession of the premises under the circumstances.

Appellee was an infant and was imposed upon and defrauded by her uncle, who fraudulently acquired the deed conveying the title to the lands which should have passed to her upon payment of the remainder of the purchase money, but appellant occupies the position of an innocent purchaser in the transaction. for value, and without notice of any equitable claims or rights of appellee, affecting the title to the lands and is equally entitled

to the protection of a court of equity, and "where the equities are equal the law will prevail." It has been said, "No one can occupy in a court of equity higher ground than the purchaser for value without notice, for if he can maintain that position his title is established and his position impregnable." 23 A. & E. Enc. of Law, pp. 475-6; *Sorrell* v. *Sorrell*, 4 Ark. 301.

Appellee was entitled to the lands as against the heirs of John Parker, but could have been charged with the balance due upon the lands paid by him which was more than extinguished by the personal property of appellee's father converted to his own use and as between them would have the right to the lands free of any lien for the payment of the balance of the purchase money.

As against the *cestui qui trust,* A. Rubel, who occupies the position of an innocent purchaser, for value without notice, she is entitled to the lands after payment of the amount due him under the mortgage, with interest. The testimony shows, however, that he collected in different amounts from John Parker after he learned of the rights and equities of appellee in the land, $50, which was for rent of this land, $75, in all, which he applied upon another indebtedness of John Parker, due him secured by mortgage on personalty. Under these circumstances, we think equity requires that he shall be charged with such sums in the settlement of his debt against the land, and is entitled to recover only the difference between the said sum of $75 and the amount of the $200 loan, and interest, secured by the trust deed. Upon the payment of this amount the deed of trust should be cancelled, and the title to the property vested in appellee. The conveyance to John Parker should not be cancelled, but he should be declared a trustee, holding the title thereto for her benefit, and the decree will vest the whole legal title in appellee subject only to the payment of the balance due on the indebtedness secured by the deed of trust as indicated herein. The judgment is reversed and the cause remanded with directions to enter a decree in accordance with this opinion.