### CHADDICK *v.* MORRIS.

Opinion delivered January 27, 1919.

VENDOR AND PURCHASER—INNOCENT PURCHASER—NOTICE.—One who purchased land from another who had been in continuous possession for 12 years had a right to assume that his grantor was the owner, though plaintiff's ancestor had previously been in possession of the land up to the time of her death, if no title to such ancestor was on record.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT OF FACTS.

This suit was instituted by the appellants against the appellees, in the Lonoke chancery court, to cancel certain deeds and to recover the possession of certain lots in the town of England, Lonoke County, Arkansas.

The appellants alleged that they were the children and heirs at law of Mrs. Mattie Spaulding, who died intestate, in Lonoke County, in 1895 seized and possessed of the lands in controversy. They allege that they inherited the lands from their mother who acquired the same by deed from John C. England, now deceased; that the deed from England to their mother had never been recorded and was lost or destroyed without the knowledge or consent of the appellants; that one of their number, Mrs. Mattie Chaddick, was *femme covert* at the time of the death of their mother and was still under that disability; that Frank Spaulding was of age when his mother died, but was living in the State of Texas and was ignorant of the facts set up in the complaint until the bringing of this suit. They alleged that the remaining four children were minors at the death of their mother and that Eva, Jennie and Gertrude were *femmes covert* and had been before they reached the age of eighteen years; that all of the appellants were ignorant of the fact that they had an interest in the lands and that they had been defrauded of their homestead until a short time before the bringing of this suit.

Appellees answered deraigning title also through John C. England and set up that they were innocent purchasers for value.

Appellants replied that if any deed from England executed after his deed to their mother and any deed thereafter deraigning title to the appellees from England was fraudulent and void, and that appellee Geo. W. Morris had knowledge of the fraud at the time of his alleged purchase of said lands.

The appellants prayed that all of the fraudulent conveyances and wills, through which appellants deraigned title from John C. England, be canceled and set aside as

clouds on their title. To sustain their title Mrs. Mattie Chaddick testified that she was the daughter of Mrs. Mattie Spaulding; that she was a married woman, having married in 1891; that her mother died in 1895 at her own home in block 9 in the town of England; that the other appellants are her brothers and sisters; that her mother at the time of her death owned the property in controversy, having purchased the same from John C. England in 1891; that her mother told her that she had paid for the lots; that she gave the deed to Jim Williams, her uncle, to have the same recorded and that Williams forgot to have the deed recorded, and same was never recorded; that her mother lived on the place about five years and improved the same by building a house and barn and making other improvements, and made the same her homestead and died there; that she saw the deed more than once; saw the same after her mother gave it to Jim Williams to be recorded; that England is dead; that none of the children lived on the homestead after the death of their mother; that she did not know who occupied the house after her mother's death; her mother first moved on the place in 1890; and witness saw the deed in 1891; witness was living with her mother when she bought the property; that witness did not claim her interest in the property because it was turned over to her aunt to take care of the younger children with and witness did not know that her aunt ever disposed of the property. After the death of witness' mother, witness' grandmother and Aunt Lizzie were to take the children and educate them and witness agreed for them to take the rents and what they could get out of the estate to take care of and educate the younger children and that is why witness never looked after the property. She did not know that the appellees were claiming the property until a few months before; that she had no reason to believe that anyone was claiming the property until a short time before when she learned that the Morris' were claiming it; that she had known appellees for twenty-five years.

Another witness testified that Mrs. Spaulding told him that she had the lots paid for and she desired to sell witness a horse in order to get money to build a house on the lots; that witness paid Mrs. Spaulding $125 for the horse; that transaction took place about twenty-five years ago; that witness knew Jim Williams but did not know what became of him; he was charged with murder and ran away. Witness did not know whether Robins moved into the Spaulding house or not when he went to England.

Homer Spaulding, a son of Mrs. Mattie Spaulding, testified that his mother bought some lots in the town of England about 1890 from Mr. England and made improvements on the same and lived there the last five years of her life; that the appellants, except Frank Spaulding and Mattie Chaddick, were minors when their mother died; that he saw his mother's deed to the lots and thought the deed was recorded; that his mother gave the deed to Jim Williams, her brother-in-law, to have same placed on record; that the deed was lost and had never been recorded; that the children never lived on the place after the death of his mother. He saw the deed handed to his mother. Witness went to Texas when he was about eighteen years of age and returned to Arkansas in August, 1916. This testimony was corroborated by two other witnesses for the appellants.

Witness A. O. Gunnels testified that he married the youngest daughter of Mrs. Mattie Spaulding when she was a little past sixteen years of age. He and George W. Morris talked about the land before the bringing of the suit. Morris refused to say whether he had a deed to the property. He refused to show his title; said that he would do that when the court made him. Witness told him that they would not bring suit against him if he had a good title. Morris told witness that he only had a deed from McFadden. Witness asked him if he had Robins' title to the property and he said he didn't. Witness asked if he knew how Robins came by the property and Morris said he did not know unless he came by it from

Spaulding. Witness replied that Mrs. Spaulding died with it in her possession.

George W. Morris testified for the appellees substantially as follows: That he was the owner of the lots in controversy. He bought from McFadden. He had a warranty deed which was of record. He never heard of Cal (J. C.) England making two deeds to the same property. He knew Mrs. Mattie Spaulding, she died in 1895 in possession of the property, but he did not know she had these minor children, appellants, when she died. He did not know that Mrs. Spaulding was the owner of the property at the time he purchased, he supposed that Robins owned it. Robins said he a good title and he never questioned his integrity, he had lived there for ten or twelve years and witness supposed his title was all right. He never thought anything to the contrary until appellants brought the suit. Witness did not look on the records to see whether or not he had title. He did not know whether Robins claimed under will or deed but supposed the title would be all right. Witness told Gunnels and his wife, before the bringing of the suit, that he had only a deed from McFadden. He refused to show Gunnels and his wife the deed and did not know why he had not put the McFadden deed on record, he had a good many deeds that were not placed on record, some of them twenty years old. He paid McFadden $650 for the property, he said that he wanted to wind up the estate.

The records show that George W. Morris gave lots 7 and 8 in block 9 to his son George E. Morris and George E. conveyed the same back to his father, and his father afterwards executed a quit claim deed back to his son. George E. Morris and his partner in business executed a deed of trust on this and other property to secure the Bank of England for money borrowed of it while George W. Morris was president.

The above are substantially the facts upon which the court entered a decree dismissing the appellants' complaint for want of equity, from which decree is this appeal.

*Arthur D. Chavis*, for appellants.

1. The great preponderance of the evidence shows that the chancellor erred in his findings.

2. Mrs. Spaulding bought the land from John C. England, paid for it, took possession, improved it and died in actual possession.

3. Actual possession under claim of title is notice to all persons of all rights and equities of the party in possession. 109 Ark. 500. It is true Mrs. Spaulding's deed was not recorded and lost or destroyed but appellees had notice of it and such a deed may be established by parol evidence under Kirby's Digest, § 757. 45 Ark. 81; 84 *Id.* 415; 96 *Id.* 172; 106 *Id.* 345; 109 *Id.* 120.

4. Where one dies in possession it is *prima facie* evidence of seizin in fee. 33 Ark. 150; 89 *Id.* 453; 105 *Id.* 653. Death of the ancestor in possession is *prima facie* evidence of title. 33 *Id.* 150; 21 *Id.* 62; 45 *Id.* 344; 94 *Id.* 60; 106 *Id.* 344; 110 *Id.* 576.

Appellees' purchase was fraudulent and void and their title is void. All the circumstances show fraud avoiding their title. 41 Ark. 414; 85 *Id.* 106; 108 *Id.* 159; 41 *Id.* 186; 99 *Id.* 398; 105 *Id.* 242. A clear case of fraud is established by the evidence and the cause should be reversed. Cases *supra*.

*Jas. B. Gray*, for appellees.

The decree should be affirmed because (1) the transcript does not contain all the evidence and (2) appellants' abstract does not comply with rule 9 by setting out the testimony as required. The chief defense of appellees was that they were innocent purchasers for value and without notice and appellants' abstract does not set forth any of the deeds or wills relied upon. 107 Ark. 321 is controlling in this case.

Morris is shown to be an innocent purchaser for value without notice and his title is impregnable.

*Arthur D. Chavis*, for appellants, in reply.

All the testimony is in the transcript and appellants' abstract shows all of it.

WOOD, J., (after stating the facts).   Appellees alleged in their answer that England conveyed the lots in controversy to R. E. Robins and that Robins had no notice of plaintiff's claim to the property.   They alleged that they were innocent purchasers for value without any notice of plaintiffs' claim; that Robins and those claiming the title under him had been in the adverse, notorious, peaceful and continuous possession of the property for more than twenty-five years.

The appellants in their reply denied that England conveyed or could convey the land to Robins in the years 1895 and 1896; they denied that said title ever vested in Robins; and denied that he ''took possession of the same with knowledge of plaintiff's ownership thereof.'' They also denied that appellee George W. Morris acquired no title from will or mesne conveyances from Robins.

But we did not find in appellants' reply to the answer as abstracted that they anywhere denied that Robins went into possession of the property after his purchase of the same from John C. England in the years 1895 and 1896 as alleged in appellees' answer nor do appellants specifically deny that the appellees, defendants below, were innocent purchasers for value as alleged in their answer, but even if these allegations had been denied and the issue raised as to the possession of R. E. Robins and as to whether the appellees were innocent purchasers of the property, the evidence of George W. Morris shows that the appellees were innocent purchasers.

Appellee George W. Morris testified that at the time he purchased the property, R. E. Robins had been in possession of the same for ten or twelve years.   McFadden from whom he purchased claimed under Robins and the undisputed evidence shows that appellees had been in possession exercising ownership over the property from the time of their purchase until the bringing of this suit. The testimony of Morris shows that he had paid $650 for the property.

Therefore, even though it be conceded that John C. England, the common source of title, had conveyed to Mrs. Mattie Spaulding, the mother of the appellants, the property in controversy before he conveyed the same property to Robins, if he did convey the same to Robins, nevertheless the undisputed evidence shows that the deed of Mrs. Spaulding was not placed upon the record.

While Morris testified that he knew that Mrs. Spaulding had possession of the property at the time of her death, his testimony further shows that no one claiming under her had been in possession of the property since her death, but to the contrary that the property at the time of his purchase had been in possession of those under whom appellees claimed title. The proof shows that George W. Morris at the time of his purchase had neither actual nor constructive notice of any title in the appellants. The possession of the land by the appellants' mother at the time of her death and the fact that appellants were minor children living with the mother at that time would not be notice to appellee George W. Morris that they had any title or claim of title at the time of his purchase many years thereafter. Inasmuch as those under whom appellees claimed title had been in possession of the lands for ten or twelve years at the time appellee George W. Morris purchased same, he had the right to assume that they were the owners thereof and had the right to convey the same. Appellee G. W. Morris held under Robins who held under John C. England who had the record title.

Between appellants and appellees upon this state of facts appellee George W. Morris was not bound to go behind the grantor's possession to make inquiry as to the title.

We find nothing in the circumstances presented in the record to justify us in concluding that the testimony of the appellee George W. Morris is unworthy of belief. Such being the case his testimony shows clearly that he was an innocent purchaser for value without notice. Therefore, his title and the title of those claiming under

him is impregnable against the attack made on it by the appellants.  See *Rubel* v. *Parker,* 107 Ark. 314-321.

The decree is affirmed.