STORY *v*. GRAYSON.

4-7540                                    185 S. W. 2d 287

Opinion delivered February 19, 1945.

*Jack Machen,* for appellant.

*Surrey E. Gilliam* and *Melvin T. Chambers,* for appellee.

McHANEY, J.   Appellants are the sons of Emma Story and she is the record owner in fee, subject to a mortgage, of the land here in controversy. On November 9, 1942, she entered into a written contract with appellant, J. D. Story, to sell him 40 acres of said land, and, on

January 4, 1943, she entered into a separate similar contract with appellant, McKinley Story, to sell him an adjoining 40 acres of said land. Neither of said contracts was acknowledged, was not subject to record, and was not recorded.

On February 18, 1943, said Emma Story executed and delivered to appellee, Maurice Lewis, an oil and gas lease on the two 40-acre tracts she had previously sold to her sons, and on other lands not here involved, reserving to herself a $\frac{1}{8}$ royalty interest in the oil and gas, and on the same she executed and delivered to appellee Grayson a deed conveying to him $\frac{1}{2}$ of the royalty interest reserved in said lease. Both of said instruments were promptly filed for record and were recorded on February 20, 1943. The total consideration paid her for said lease and royalty interest was $800, and out of said sum she promptly paid on the mortgage indebtedness of $1,000 the sum of $650.

Thereafter appellants, on June 10, 1943, each filed separate suits against Grayson and their mother and against Lewis and their mother, in which they prayed cancellation of said lease and royalty deed on the ground that appellees had due notice of their interest in said lands at the time of their purchase, and that said lease and royalty deed constitute a cloud on their title, and should be canceled. Appellees defended on the ground that they had no notice of the interest of appellants, either actual or constructive; that they were innocent purchasers, having had the title to said lands examined by their agent prior to their purchase; and that their respective titles to the lease and royalty should be quieted and confirmed in them respectively as against Emma Story and appellants. Trial resulted in a decree dismissing the complaints for want of equity and quieting the title of appellees as prayed by them. This appeal followed.

The facts are not greatly in dispute. Emma Story is the widow of John Story, deceased, and she and appellants are negroes. It is undisputed that Emma was the

record owner of the two 40-acre tracts here involved and of another adjoining 20-acre tract on which her home is situated, and where she resides, and that all the 100 acres constituted her homestead. Neither of her sons, appellants, resides on any part of this 100-acre tract, but they have, for a number of years, resided in separate homes of their own, near these lands and have rented and cultivated portions of these lands. Neither tract is under fence. It is argued by learned counsel for appellants that their possession was evidenced by farming operations and preparations for farming such as clearing the land by cutting sprouts and bushes, but Marshall Story, son of appellant McKinley Story, testified he cut the sprouts and bushes just as he did every spring for several years prior to 1943, and that he could see no difference in the way it was farmed or prepared for farming in 1943 from the way it was farmed for several years prior thereto. All the witnesses, including appellants, testified that there was no change in the manner of farming the land after purchase from what it had been before. Now had they been actually living on and occupying their respective tracts, we would have a different situation, but there was no change in the manner of their possession after purchasing under their unrecorded contracts from what it had been before as tenants, and we agree with the trial court that this continued possession was not sufficient to put appellees upon inquiry as to the nature of their interest. Prior to their purchase their possession was not exclusive, but was in connection with the occupancy of their mother, the owner of the record title, and their possession was referable to that of their mother and the owner of the land. In *Ellis* v. *Nickle,* 193 Ark. 657, 101 S. W. 2d 958, the late Judge BUTLER, speaking for the court, said: ''Where possession is not exclusive, however, but in connection with the occupancy of another who sustains the relation of parent or who is the owner of the record title, the possession of others will be referable to the possession of the parent or the owner of the record title and is not such as would require the purchaser to make inquiry as to the nature of their possession or any hidden equities which might

1032

exist in their favor." Citing *Rubel* v. *Parker*, 107 Ark. 314, 155 S. W. 114, and cases there cited; *Chaddick* v. *Morris*, 137 Ark. 467, 208 S. W. 589; *Scott* v. *Carnes*, 183 Ark. 650, 37 S. W. 2d 876. Actual occupancy is not necessary in all cases, but making use of the land by clearing and cultivating may suffice. *Sims* v. *Petree*, 206 Ark. 1023, 178 S. W. 2d 1016.

Here the undisputed proof shows that prior to purchase of the lease and royalty by appellees, their agent made a diligent search of the records and found title in Emma Story. There was no visible change in the possession, nothing to put their agent on notice of a change of ownership or possession. There was no actual notice to him that Emma had sold to appellants and we think the evidence offered insufficient to put said agent on inquiry. Where a purchaser shows that he has paid a valuable consideration in good faith, the burden of showing that he purchased with notice is on the party alleging it. *Scott* v. *Carnes* and other cases, *supra*.

The decree is correct and is accordingly affirmed.