## MODERN AMERICAN MORTGAGE CORP.
### *v.* William R. NELSON et ux

5-5592                                          469 S. W. 2d 124

Opinion delivered June 14, 1971
[Rehearing denied August 9, 1971.]

*Wright, Lindsey & Jennings;* By: *Isaac A. Scott, Jr.,* for appellant.

*Shackleford & Shackleford,* for appellees.

Conley Byrd, Justice. The trial court cancelled a deed from appellees William R. and Doris Nelson to Jimmy Ray Jones and voided a mortgage from Jones to appellant Modern American Mortgage Corporation. For reversal, appellant contends:

"I. The evidence failed to establish fraud or misrepresentation in the procurement of the warranty deed.

II. The failure of either Mr. or Mrs. Nelson to read the warranty deed estops them from denying the conveyance.

III. Modern American Mortgage Corporation is a bona fide purchaser of a mortgage without notice of defects, and the claim of fraud cannot be asserted against it."

The undisputed facts show that for some time prior to June 20, 1969, the Nelsons were in possession of and living on a small plot of land on Kenova Road in Smackover, Arkansas. After negotiations with R. W. Miller, Jr., agent of Jimmy Ray Jones d/b/a Imperial Builders Inc., the Nelsons on June 20, 1969, entered into a contract for construction of a new house on the same plot. The printed contract referred to Imperial Builders as "Contractor" and the Nelsons as "Purchasers." After stating that the contractor was to provide all labor, materials and things necessary for the proper construction, the contract recited:

"In consideration of the performance of the Contract, the Purchasers agree to pay the Contractor in current funds as compensation for his services hereunder the sum of $10,300.00 (for house only) to be paid on closing of FHA insured loan of $10,300.00. Buyer to furnish lot valued at $600.00. Builder to pay all closing cost. It is further agreed that said Purchasers will execute a note in the sum of $10,300.00 to Imperial Builders Inc., and also execute a mortgage upon said property to Imperial Builders Inc. as security herein, said property to be mortgaged is described as follows: (Legal description same as above.) It is further agreed that the note is to be returned and said mortgage removed and released upon closing of the loan and full payment thereof in the sum of $10,300.00 to Imperial Builders Inc. It is further agreed that this Contract is contingent upon the approval of Purchasers' loan from Modern American Mortgage Co. and Purchasers providing satisfactory proof of title to said land to Imperial Builders Inc."

Imperial Builders through R. W. Miller, Jr., again contacted the Nelsons sometime in July and had them execute another contract explaining that either the description or the wording was not right.

Thereafter Imperial Builders (Jones) through appellant obtained an FHA loan commitment on August 26, 1969, to insure a loan by appellant to the Nelsons when Imperial Builders completed the house.

On September 15, 1969, Jones and his wife executed a construction money mortgage on the same plot of ground to appellant. Appellant in making the loan relied upon a title insurance binder showing Jones to be the owner of the property. Neither appellant nor any of its agents inspected the property prior to the mortgage. Based upon FHA appraisals, appellant advanced a total of $6,310.00 to Jones.

Before the house was completed, Jones d/b/a Imperial Builders went bankrupt. After numerous labor and materialmen's liens had been filed, Mrs. Nelson contacted appellant and for the first time learned that she and her husband had conveyed the land on which they lived to Jones by a deed dated September 4, 1969.

Mrs. Nelson testified that they had never built a house before this one; that after they arrived at the terms of the June 20th contract, Miller again contacted them about the July contract; that the house was commenced in the latter part of August; and that Miller and Jones again contacted them about September 4th. At that time Miller had two or three papers clipped together—one of which was shorter than the other. At the same meeting she and her husband were to pick out the paneling. At this meeting Miller told them (the Nelsons) these additional papers had to be signed to get on with the building. Admittedly, Mrs. Nelson and her husband signed the papers without reading them. She concluded that one of these papers was the deed dated September 4th bearing her signature. She also testified that she would not have signed the deed had she known that it was a deed.

Mr. Nelson's testimony is similar to Mrs. Nelson's except that he thought that at one time he signed an application for an FHA commitment and also an authorization for a credit check.

John Kooistra, senior vice president of appellant, testified that a copy of the June 20th contract was in appellant's files; that appellant obtained the FHA commitment at the instance of Imperial Builders for the loan to be made to the Nelsons; that in making the construction money mortgage, appellant did not check to see who was in possession of the premises but relied solely upon the title insurance binder as to the fee title; and that disbursements had been made in the total amount of $6,310.00 based upon the FHA inspections. Mr. Kooistra stated that before appellant would make a construction money mortgage to a builder, appellant required a take-out letter from a lender and a copy of the builder's contract.

Jimmy Ray Jones denied that he was present when any documents were signed by the Nelsons. He admitted that Miller had been his salesman and that he had been unable to reach Miller.

POINT I. Appellant argues that this was a normal business transaction and that the circumstances of the execution of the warranty deed as related by the Nelsons cannot be construed as an attempt on the part of the builder to deceive. We disagree. It appears from the testimony that the Nelsons were ignorant of the papers necessary to secure the FHA commitments required to comply with the contract and that these details were gratuitously undertaken by the builder who apparently had had some experience in the matter. The representation that the execution of the papers was necessary to get on with the building was a misrepresentation, for by the express terms of the bargained contract a conveyance of the premises to the builder was not necessary to get on with the building.

POINT II. In arguing that the Nelsons are estopped to deny the conveyance to Jones, appellant relies upon

*Upton* v. *Tribilcock,* 91 U. S. 45 (1875) and *Stewart* v. *Fleming,* 105 Ark. 37, 150 S. W. 128 (1912).

In *Upton* it was pointed out that "a contractor must stand by the words of his contract, and, if he will not read what he signs, he alone is responsible for his omission." The same rule was applied in *Stewart* v. *Fleming, supra,* but in doing so the court pointed out that there was no misrepresentation as to any matter of inducement to the making of the lease, which, from the relative position of the parties, the one could be presumed to contract upon the faith and trust reposed in the other party. However, in the first appeal of *Stewart* v. *Fleming,* 96 Ark. 371 (1910), the applicable law was stated in this manner:

> " 'It is true that when the means of information are open to both parties alike, so that with ordinary prudence and vigilance each may be informed of the facts and rely upon his own judgment in regard to the thing to be performed or the subject-matter of the contract, if either fails to avail himself of his opportunities, he will not be heard to say he has been deceived. * * * But when the representation is made of a fact that has nothing to do with opinion, and is peculiarly within the knowledge of the person making it, the one receiving it has the absolute right to rely upon its truthfulness, though the means of ascertaining its falsity were fully open to him. It does not lie in the mouth of the declarant to say it was folly in the other party to believe him.' "

Thus it can be seen from the record that Jones was an experienced builder. The Nelsons who were building their first house had no knowledge of the papers necessary to be signed to get on with the construction. While it may have been folly for the Nelsons to sign without reading whatever Jones or his agent stuck in front of them, we cannot agree that as between them and Jones, Jones is in a position to argue that the Nelsons are estopped to say that they believed the representations made by Jones' agent. Of course appellant as assignee

of Jones stands in no better position than Jones, unless it stands in the position of a bona fide purchaser for value without notice.

POINT III.   The question of whether a subsequent purchaser or mortgagee can be a purchaser for value and without notice as against a grantor continuing in possession after the execution of a conveyance has been before us a number of times. See *Turman* v. *Bell,* 54 Ark. 273 (1891); *Morgan* v. *McCuin,* 96 Ark. 512, 132 S. W. 459 (1910); *American Bldg. & Loan Assn.* v. *Warren,* 101 Ark. 163, 141 S. W. 765 (1911); and *Temple* v. *Tobias,* 186 Ark. 851, 56 S. W. 2d 585 (1933).

In *American Bldg. & Loan Assn.* v. *Warren, supra,* the applicable rule was stated:

"Ordinarily, possession by a person under a contract of purchase, though unrecorded, is notice of his equitable rights and interests in the property. Actual possession is evidence of some title in the possessor, and puts the subsequent purchaser or mortgagee on notice as to the title which the occupant holds or claims in the property. Generally, actual, visible and exclusive possession is notice to the world of the title and interest of the possessor in the property, and it is incumbent upon the subsequent purchaser or mortgagee to make diligent inquiry to learn the nature of the interest and claim of such possessor; and if he does not do so, notice thereof will be imputed to him. (Citing cases.)

"But it is urged that this rule does not obtain in cases where the grantor continues in possession of the property at the time of the grant and after the execution of the conveyance. It is urged that in such cases the law presumes that the grantor holds in subordination to the title which he has conveyed, and not in opposition to it; and that third persons dealing with property may presume that the possession of the grantor is only by sufferance of the grantee."

Here appellant had obtained an FHA commitment insuring a loan to be made by appellant to the Nelsons upon completion of the building. Appellant, as a prerequisite to making the construction loan, required not only the FHA commitment but also a copy of the builder's contract with the Nelsons. The contract showed that the Nelsons owned the lot upon which the house was to be built. Furthermore appellant relied upon the FHA inspections on the commitment to the Nelsons to advance the construction money to Jones. It would be illogical to say that appellant under the circumstances could presume that the possession of the Nelsons was at the sufferance of Jones. Since appellant cannot come within the exception to the rule that possession is notice to the world, it follows that appellant was not a purchaser for value without notice as against the Nelsons.

For the reasons herein stated, the decree is affirmed.

GEORGE ROSE SMITH AND FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot agree with the decree canceling Modern American Mortgage Company's mortgage and its affirmance here. If ever there was a case where the principle that, as between two innocent parties, the one whose negligence made a loss possible should bear it and be estopped to set up his prior right against the party without fault, this is one. See *Turman* v. *Bell*, 54 Ark. 273, 15 S. W. 886, 26 Am. St. R. 35. This rule applies in favor of a subsequent purchaser for value even where the maker of a deed carelessly executes it in reliance upon the false representations of a person in whom he placed confidence and trust. *Davidson* v. *Davidson*, 42 Ark. 362.

Bypassing the extremely doubtful proposition that appellees could possibly contend that their failure to read the deed they signed, and which they admit they had every opportunity to read, was justified by any express or implied representation by persons in whom the Nelsons had no specific reason to place trust and confidence, this record falls far short of showing that appellant was not a bona fide purchaser, as mortgagee,

without notice, actual or constructive, of defects in the title of Jimmy Ray Jones or unknown equities in the Nelsons and the claim of fraud should be unavailing against it.

The only contract of which Modern American can be charged with either notice or knowledge is that of June 20, 1969. In that contract, the Nelsons were called "purchasers." That contract specified that the "buyer" was to furnish a lot valued at $600. The completed house was to be mortgaged to appellant when completed to secure a loan to be insured by the Federal Housing Authority pursuant to its commitment issued to appellant. In making the construction loan, appellant relied upon the record title held by Jimmy Ray Jones d/b/a Imperial Builders and placed in him by the Nelsons, intentionally or negligently. Mr. Kooistra testified that, in every case in which there is an FHA commitment and the builder has title to the property, there is an assumption that the property will be conveyed to the person to whom the commitment runs upon termination of construction. He also said that the FHA does not insure construction loans on single family units. This testimony was undisputed. The construction by Jones was commenced in August and ceased in December. There were several inspections by the FHA upon the basis of which appellant made advances on the construction loan. The porch of the house in which the Nelsons lived was torn off to make room for the new one. The Nelsons themselves constructed a carport on the new house.

There can be no doubt that appellant gave valuable consideration for the mortgage executed by Jones. Consequently, the burden was upon the Nelsons to show that Modern American had actual or constructive notice of their rights and that appellant was not acting in good faith. *Ellis* v. *Nickle,* 193 Ark. 657, 101 S. W. 2d 958; *Scott* v. *Carnes,* 183 Ark. 650, 37 S. W. 2d 876; *Story* v. *Grayson,* 208 Ark. 1029, 185 S. W. 2d 287; *Smith* v. *Olin Industries,* 224 Ark. 606, 275 S. W. 2d 439. Appellees do not contend that there was actual notice or that Modern American did not act in good faith. Good faith is presumed unless notice to the alleged bona fide

purchaser is shown. *Ellis* v. *Nickle,* supra. Unless it was shown that the fact that the Nelsons were residing on the tract on which the house was being built constituted constructive notice that they claimed the property adversely to Jones, the mortgage must be held valid.

Before possession can constitute constructive notice, the occupancy must be apparently exclusive, otherwise possession is presumed to follow the title and those dealing with the owner of the record title are warranted in treating him as the exclusive owner. *Walden* v. *Williams,* 128 Ark. 5, 193 S. W. 71. Possession cannot be exclusive, when it might be referable to possession of another. *Alphin* v. *Blackmon,* 180 Ark. 260, 21 S. W. 2d 426. There can be no constructive notice where occupancy is joint or referable to the record title or in connection with the occupancy of another. *Walden* v. *Williams,* supra; *Ellis* v. *Nickle,* supra; *Story* v. *Grayson,* supra. If the possession of the claimant is referable to the possession of the holder of the record title, it is not such as would require a subsequent purchaser to make inquiry as to the nature of the possession or any hidden equities which might exist in favor of the claimant. *Ellis* v. *Nickle,* supra; *Story* v. *Grayson,* supra. The claimant's possession must be adverse, exclusive, unequivocal and inconsistent with the claims of any other person in order to constitute constructive notice. If it is to put a purchaser on his guard, it must be sufficiently distinct and unequivocal that it is not likely to be misunderstood or misconstrued. *Scott* v. *Carnes,* 183 Ark. 650, 37 S. W. 2d 876.

Possession of a grantor after execution of a deed is deemed to be subordinate to the rights of his grantee, if not long continued. *Turman* v. *Bell,* 54 Ark. 273, 15 S. W. 886, 26 Am. St. R. 35. If the possession of the grantor is continued but a short time, it may reasonably be referred to the sufferance of the grantee. *Turman* v. *Bell,* supra; *Morgan* v. *McCuin,* 96 Ark. 512, 132 S. W. 459.

In this case, the deed to Jones was executed by the Nelsons on September 4. The mortgage to Modern

American was executed on September 15, 1969. Construction was underway. In view of the designation of the Nelsons as "purchasers" in the contract with Jones, the obligation of the Nelsons to furnish the lot upon which the house was built, the short lapse of time between the execution of the deed and appellant's acceptance of the mortgage, and the natural association of their continued occupancy of the old dwelling house on the property with the construction contract and the occupancy by Jones, the holder of the record title by deed of the Nelsons, it seems to me that appellant was not put to any inquiry more than that which it made. The possession of the Nelsons was equivocal and subject to misunderstanding and misconstruction. It was certainly not so inconsistent with the Jones title, under the circumstances, as to put appellant on guard. It was certainly not exclusive.

I would reverse the decree and direct a foreclosure of the mortgage.

I am authorized to state that Justice George Rose Smith joins in this dissent.