## MORGAN v. McCUIN.

### Opinion delivered November 21, 1910.

1. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—A chancellor's finding of facts is conclusive on appeal unless it is clearly against the weight of the evidence. (Page 518.)

2. ADVERSE POSSESSION—RETENTION OF POSSESSION BY GRANTOR.—Where a grantor, after having executed a deed, remains for a short time in possession of a portion of the premises conveyed, he is presumed to hold in subordination to the title conveyed unless there is evidence of a contrary intention. (Page 519.)

Appeal from Union Chancery Court; J. M. Barker, Chancellor; affirmed.

STATEMENT BY THE COURT.

This is a suit in chancery commenced on the 12th day of August, 1909, by D. E. Morgan against E. J. McCuin, Mrs. N. McCuin and Neely Burton. The purpose of the action was to reform a certain deed executed by Morgan to Burton, and to recover possession of the land in controversy. E. J. McCuin claimed no title to the property, and the suit was discontinued as to him. The defendant Burton failed to answer, plead or demur, but made default. The defendant Mrs. McCuin answered, denying the allegations of the complaint and setting up title in herself to the lands in controversy. The facts, so far as they are material to a decision of the rights of the parties, are as follows:

On the 1st day of January, 1902, John Hill and Mary Hill, his wife, by warranty deed, conveyed to the plaintiff, D. E.

Morgan, the following described lands situated in the town of El Dorado, in Union County, Arkansas, towit:

Beginning at a point 60 feet due south of the southwest corner of block 21, shown on the plat of the town of El Dorado, Arkansas, thence south to right-of-way of the St. Louis, Iron Mountain & Southern Railway Company, thence in a northeasterly direction with said right-of-way to the western boundary of Jackson Avenue, thence north to a point 60 feet due south of the southeast corner of said block 21, thence west about 200 feet to the place of beginning.

On September 21, 1903, D. E. Morgan conveyed by warranty deed to Neely Burton a part of said lands. The description of said lands as contained in the deed are as follows:

"A strip or parcel of land in block 40 as shown on the town plat of El Dorado, Arkansas, and described by metes and bounds as follows: Beginning 228 feet south of the southwest corner of block 21, as a starting point on Hill Avenue, and running south along east Hill Avenue 49 feet to the right-of-way of railroad; commencing again at above starting point of this tract, and running east 60 feet to a stob, thence in a southwest direction with the right-of-way until this line intersects with the west line of this about 70 feet."

On September 22, 1903, Neely Burton conveyed the land to L. K. McKenney by deed containing the same description. On the 31st day of December, 1906, McKenney conveyed the land by the same description to J. R. Elder, who in turn reconveyed to Neely Burton. On the 14th day of March, 1908, Neely Burton conveyed the same land by deed containing the same description to Mrs. N. McCuin. The consideration named in the deed was $600, and the receipt of it was acknowledged.

Neely Burton testified that when he purchased the land from D. E. Morgan he only purchased the land outside of the inclosure, and that he did not know that a mistake had been made in the description of the land in the deed; that he never bought the land that was north of the fence, which he says was the boundary line between him and Morgan. In response to a question, he stated that if he had known about the mistake and could have done so he would have taken all the land his deed called for.

D. E. Morgan testified for himself, and said that when he sold to Neely Burton a part of the land was inclosed, and that he intended to sell and did sell to Burton only that part of it that was uninclosed; that, in order to obtain a correct description of the land to be conveyed to Burton, he had the part sold to him surveyed; that there was a house situated on the land conveyed to Burton, and that it was situated on the northwest corner of the land sold to him; that he supposed the southwest corner of the graveyard fence was the southwest corner of block 21, and he caused a line to be run from said corner to the northwest corner of Burton's house for a beginning point to be used in the description of the land in the deed from himself to Burton; that it afterwards turned out that the southwest corner of the graveyard was several feet south of the southwest corner of block 21. Morgan further testified that some weeks before Mrs. McCuin purchased from Neely Burton she and her husband approached him with a view of purchasing the land which he still owned; that they went on the land, and that he pointed out the fence between his land and Burton's as the boundary line between them; that when he first sold to Burton the fence between them was right up against Burton's house, and that he moved it three feet further north in order to obtain a passage way. Morgan further testified that, after Mrs. McCuin purchased the land from Burton, she had a survey made of the same, and from this survey, made in accordance with the description contained in the deed from Burton to Mrs. McCuin, it was found that the north boundary line was 15 feet north of and beyond his fence line; that Mrs. McCuin tore down the fence between them and set it on the boundary line as surveyed by her; that he noticed that his fence had been torn down and moved back; that he asked Mr. McCuin why he had done that, and McCuin replied that their lot went to that point, and that he replied that it did not; that McCuin said that their deed called for the land, and that they were going to have it; that he told McCuin that he would not stand that, and notified him not to put a house he contemplated building on the disputed strip; that this occurred in the spring or summer of 1908; that he went to see his lawyer at once, and told him that McCuin was going to build a hotel partly on his land, and directed him

to institute suit at once to stop it; that his attorney informed him that it was not necessary to institute the suit at once; that he had no further conversation with the McCuins about the matter, and that they subsequently erected a hotel, about 15 feet of which was placed on this land claimed by him; that, after the erection of this hotel, he brought this suit for the purpose of reforming his said deed to Neely Burton and of obtaining possession of the disputed strip of land upon which the hotel was partly erected.

A. J. McCuin was the agent of his wife in the purchase of the land from Burton, and denied that he had any knowledge of any mistake having been made in the description of the land until this suit was brought; that when he purchased the land and when the purchase price was paid, he thought he was purchasing for his wife the land described in the deed; that, after the deed had been executed and the purchase price paid, they had the land surveyed preparatory to building a hotel on it; that when it was ascertained that the north boundary line was 15 feet north of and beyond the fence, which had been built by Morgan, he tore down the fence and removed it to the boundary line as established by the survey; that before the survey was made he notified Morgan personally of that fact, and that Morgan promised to be present when the survey was made; that Morgan came along after the survey had been made and after the fence had been removed, and said that the survey was wrong, and claimed that a part of his land was being taken by the survey; that he told Morgan that he could have the line resurveyed if he thought it was wrong, and told him that he wanted the line established so that he could build a hotel; that this conversation occurred in June, 1908, and Morgan went away and never had any further conversation with him in regard to the matter; that Morgan never had the land resurveyed, and in October, 1908, the erection of the hotel was commenced, and that it was finished about the first of the following February; that Morgan knew that the hotel was being partly erected on the strip claimed by him, and did not make any objection on that account.

McCuin admitted that he spoke to Morgan about buying his land prior to the time he purchased the land from Burton

for his wife; but denied that Morgan told him that he owned all the land in the inclosure, or that he told him that the fence was the boundary line between him and Burton.

Mrs. N. McCuin testified for herself, and admitted that A. J. McCuin was her agent in the purchase of the property. She denied that she had ever been notified, or that she had ever heard that a mistake in the description of the property sold in the deed from R. E. Morgan to Neely Burton was claimed to have been made until this suit was brought. She admitted that she had been in El Dorado in February before the land was bought from Burton, and that at that time she looked at Morgan's property adjacent to it, but states that she never went on it, but merely looked at it in a general way as she walked down the street by it; that she paid $600 to Neely Burton for the land at the time she purchased it and received a deed therefor.

Joseph Miller testified that he was present when Morgan showed McCuin his land, which was adjacent to the Burton tract. When asked if Morgan pointed out the land he then owned, said: "Only in a general way"; and further stated that he thought the land was inclosed; that he acted as agent for the McCuins in purchasing the land from Burton, and he thought he was buying the property that was described in the deed, and did not know that there was a mistake in the description of the land in the deed; that Mr McCuin had previously talked with Burton about purchasing the propery, and that he was acting under his instructions.

The chancellor found the facts and the law generally for the defendant Mrs. N. McCuin.

The decree was therefore entered dismissing the complaint for want of equity, and the plaintiff has duly prosecuted an appeal to this court.

*J. B. Moore,* for appellant.

1. The proof is clear, unequivocal and decisive that the description incorporated in the deed from appellant to Burton was intended by appellant to describe the specific uninclosed lot sold by him to Burton, and that the latter so understood and accepted the same. By reason of this mutual mistake in the description, the deed should be reformed, unless appellee was an innocent purchaser. 51 Ark. 390; 37 Ark. 626.

2. Under the allegations of the complaint, not denied by the answer, and the allegations of said answer, appellee in effect admitted that she was not an innocent purchaser. Appellant's actual possession of the land was notice to appellee of his rights and equities therein. 54 Ark. 273; 76 Ark. 25; 55 Ark. 318; 77 Ark. 309; 82 Ark. 455; 71 Ark. 31; 66 Ark. 167; 92 Ark. 321. Appellee and her agents admit not only various facts and circumstances sufficient to put a person of ordinary intelligence upon inquiry, but also that they knew at the time of appellant's possession and claim of ownership. 51 Ark. 390; 37 Ark. 626; 77 Ark. 309; 71 Ark. 31.

3. Appellant is not estopped to claim the improvements placed by appellee on the land in controversy. The evidence clearly shows that she and her husband built with full knowledge of appellant's rights and equities. The burden of proof was on appellee to sustain her plea—that she was actually deceived by appellant's conduct and that he intended that she should act upon it. 54 Ark. 509.

4. Appellant was not guilty of laches.    Kirby's Dig. § 5056; 75 Ark. 382.

*G. W. Hendricks,* for appellee.

1. Appellant was guilty of laches in waiting sixteen months to bring his suit when, under the circumstances, he should have acted promptly. 15 Ark. 296; 46 Ark. 348; 93 U. S. 62; 5 Wait, Actions and Defenses, 511; Kerr on Fraud and Mistake, 804; 48 N. Y. 200; 51 How. (N. Y.) 69; 9 Hare (Eng. Ch. Cases) 622; 9 Gill (Md.) 420; 5 R. I. 130; 89 Ind. 40; 53 Ind. 560; 58 Ind. 194; 31 Ind. 13; 135 Ill. 239; 34 Cyc. 966; 158 U. S. 417.

2. The mistake of which appellant complains is due to his own carelessness. The property is located in the county seat, where the records are kept and the surveyor resides, yet appellant, when he made the deed to Burton in which the alleged mistake occurred, failed to search the records or to call upon the surveyor to verify the description of the land. 93 U. S. 63; Kerr on Frand and Mistake, 407; 70 Ark. 512; 89 Ark. 315; 20 Am. & Eng. Enc. of L. 714; 1 Story, Eq. Jur. § 146; Pomeroy's Eq. Jur. § 839; 47 Ark. 335; 75 Ark. 272; 42 Ark. 370; 57 W. Va. 125; 49 S. E. 936; 4 Sawyer 447; 34 Cyc. 948

3. Before appellant could maintain a suit for reformation, he should be in position to place appellee *in statu quo* with reference to the improvements made. That, under the circumstances of this case, would be impossible. 93 U. S. 62; 15 Ark. 290; 17 Ark. 238.

4. Appellee was a *bona fide* purchaser for value, without notice of any mistake.

HART, J., (after stating the facts). Under the undisputed facts of this case, the plaintiff was entitled to a reformation of the deed as against Neely Burton to correct the mistake made in the description contained in the deed from Morgan to Burton. But, in order to affect the rights of Mrs. McCuin, other questions arise.

Was she a *bona fide* purchaser for value without notice of the equities of the plaintiff, Morgan? It is insisted by the plaintiff that he informed Mr. McCuin, the husband and agent of Mrs. McCuin, before she made the purchase from Burton, that he claimed the strip of land in dispute, and that he pointed out to McCuin the fence adjacent to and north of the land then owned by Burton as his boundary line. McCuin denies this, and both he and his wife say they had no knowledge that any mistake had been made, or was claimed to have been made, in the description of the land in the deed of Morgan to Burton; and stated that they did not know that Morgan claimed the land in dispute until after they had received the deed to the same and had paid the purchase money, which was $600. Joseph Miller testified that Morgan had shown his land to Mr. McCuin with a view of selling same to him; that this was prior to the time Mrs. McCuin purchased the land from Burton, but he says that Morgan only pointed out his land in a general way.

The chancellor made a general finding for the defendant, Mrs. McCuin, and this amounts to a finding by him that under the evidence as disclosed by the record Mrs. McCuin did not have actual notice of the equities of the plaintiff at the time she purchased the land from Burton and paid for the same; and also that she was a *bona fide* purchaser for value. The rule is firmly established in this State by an unbroken line of decisions that the finding of fact by a chancellor will not be disturbed on appeal unless it is clearly against the weight of evidence. When tested by this rule, it appears to us from a careful con-

sideration of the evidence that the finding of the chancellor in the respect just discussed must be sustained.

It is next insisted by counsel for plaintiff that plaintiff was in the actual and visible possession of the land in dispute at the time of the purchase of the defendant McCuin from Neely Burton, and that such possession was equivalent to actual notice of plaintiff's rights or equities. The case of *Thalheimer* v. *Lockhart,* 76 Ark. 25, and others of like character are cited by him to maintain his position. While the principle in those cases is well settled, and has often been recognized by this court, it has no application to a state of facts like that presented in this record. In the Thalheimer-Lockhart case one Smith had sold 40 acres of land to Lockhart, and a smaller number of acres was described in the deed to him. Lockhart, however, took possession of all the lands that was sold him, and remained in possession of the same. Subsequently Smith sold to Thalheimer a larger tract of land, and the description in the deed to him contained a part of the land previously sold to Lockhart. The court held that Thalheimer could not recover against Lockhart because Lockhart was in the actual, open and visible possession of the land when Thalheimer purchased it, and that this was notice to Thalheimer of Lockhart's rights. Thalheimer and Lockhart were strangers in title, and for that reason, in the absence of evidence to the contrary, the presumption was that the holding was adverse.

On the other hand, as stated in the case of *Stuttgart* v. *John,* 85 Ark. 526, where a vendor, after having executed a deed, remains in possession of the premises conveyed, he is presumed to hold in subordination to the title conveyed unless there is affirmative evidence of a contrary intention. It will be noted that the plaintiff in this case was the vendor of Burton, and there is no presumption that he intended to deny the title he had conveyed to Burton.

The distinction between the two classes of cases is clearly pointed out in the case of *Graham* v. *St. Louis, I. M. & S. Ry. Co.,* 69 Ark. 562, where the court said:

"The distinction between a vendor and a stranger in such a case relates to the character of evidence necessary to show that the possession was adverse. If the parties are strangers in title, possession and the exercise of acts of ownership are,

520    Missouri & N. A. Ry. Co. *v.* Killebrew.    [96

in themselves, in the absence of explanatory evidence, proof that the holding is adverse; whereas, if the vendor, after having executed deed, continues to remain in possession, the natural and reasonable inference, in the absence of evidence to the contrary, would be that he holds in recognition of the rights of the person to whom he has conveyed; it not being supposed, from mere acts of possession and ownership not inconsistent with the rights of the vendee, that the vendor intends to deny the title he has conveyed." To the same effect, see *El Dorado* v. *Ritchie Grocery Co.*, 84 Ark. 52. We do not mean by what we have said to overrule the case of *Turman* v. *Bell*, 54 Ark. 273; but we adhere to the rule there announced, which is that if possession by the grantor is continued but a short time after the making of a deed, it may reasonably be referred to the sufferance of the grantee; but where it is long continued, it implies a right in the occupant, and the implication is sufficient to cast upon strangers the duty to inquire. In that decision the court was speaking with reference to a case where the grantor retained possession of the whole tract conveyed for a considerable time after the grant, and held that such possession was notice of reserved rights not expressed in the deed. Here there were no reserved rights, and the grantor only retained possession of an inconsiderable part of the land granted, which happened to be within his inclosure. In such case we do not think this retention of possession was inconsistent with his grant, and put upon appellee the burden of inquiring what his rights or equities were.

The decree will therefore be affirmed.