BELLAMY *v.* SHRYOCK.

4-8064                                        199 S. W. 2d 580

Opinions delivered February 10, 1947.

*D. S. Plummer,* for appellant.

*Hal B. Mixon,* for appellee.

MINOR W. MILLWEE, Justice. Appellants and appellees are owners of adjoining residential lots in the City of Marianna and this suit involves the title to a narrow triangular strip of land lying along the boundary line dividing the two lots.

Appellants are the heirs at law of Myra D. Brown who owned both lots in 1909. At that time Mrs. Brown resided on the south part of her lot and maintained a garden enclosed by a wire fence on the north part. On November 6, 1909, she conveyed the north part of the lot, referred to as the "garden spot," to George W. Greenhaw, who constructed two houses on the property. The house constructed next to the division line between the two lots was rented by Greenhaw to George Pilkington whose wife, Myrtie Mae Pilkington, was the daughter of Myra D. Brown. George Pilkington rented the property until 1920 when he purchased from George W. Greenhaw.

In 1934, George Pilkington and wife executed a mortgage of their lot to Home Owners Loan Corporation. This mortgage was foreclosed and title acquired by the corporation in 1939, when the lot was conveyed to D. S. Plummer, another son-in-law of Myra D. Brown. Plummer and wife reconveyed to the corporation in 1941. On

January 21, 1943, Home Owners Loan Corporation conveyed the property by warranty deed to appellees, J. G. Shryock and Gladys Shryock.

The Home Owners Loan Corporation had a survey made of the lot now owned by appellees in 1942 according to the description contained in appellees' deed, and, which is embraced in the description employed in the warranty deed from Myra D. Brown to George W. Greenhaw. Appellee, J. G. Shryock, took possession of the lot in February, 1943, and stretched a line along the south boundary from the stakes set when the 1942 survey was made. In March, 1943, he started removing vegetation and debris from that part of an embankment along his south bundary line which was located within the calls of his deed. This work was stopped at the request of the husband of one of the appellants who resided in the Myra D. Brown home. Appellees then brought this suit to quiet their title to the triangular strip in controversy and to restrain appellants from interfering with their possession.

Appellants filed an answer and cross-complaint in which they claimed title to the disputed tract by an agreed boundary allegedly marked by a fence along the base of the embankment or terrace which had been accepted as the true boundary by adjoining owners for a period of more than 25 years. Title was also claimed by adverse possession of Myra D. Brown and appellants for more than 30 years. In their cross-complaint appellants sought recovery of damages against appellees for destruction of trees, shrubs, plants and soil erosion preventives on the disputed strip. Home Owners Loan Corporation intervened in the suit in conformity with the covenant of warranty contained in its deed to appellees. The corporation adopted the complaint of appellees and pleaded estoppel of appellants to deny appellees' title by virtue of the covenant of warranty in the deed of Myra D. Brown to George W. Greenhaw.

The trial court found the issues in favor of appellees and the intervenor, Home Owners Loan Corporation. A decree was entered quieting appellees' title to the strip

of land in controversy and dismissing the cross-complaint of appellants.

The chain of title to the strip of land in controversy is complete in appellees. Appellants contend, however, that their ancestor, Myra D. Brown, did not intend to convey any portion of the land lying south of the base of the embankment, and that the testimony shows that the boundary between the two lots has been clearly established by mutual consent and acquiescence of the adjoining owners in a dividing line marked by a fence along the base of the embankment for a period of 35 years. Appellants also insist that they have acquired title by the adverse possession of Myra D. Brown for 25 years which was continued by appellants following Mrs. Brown's death.

In support of these contentions George H. Pilkington, the son-in-law of Myra D. Brown, testified that he rented the property now owned by appellees from George Greenhaw from 1910 until 1920 when he purchased the lot and that he resided on the property about 25 years; that prior to the conveyance by Myra D. Brown to George Greenhaw in 1909, a fence marked the dividing line between the lot upon which Mrs. Brown's residence was located and "the garden spot" on the north, and that this fence was located along the bottom of the terrace or embankment which divided the two lots. He further testified that the fence was maintained by his wife's mother and, while the line was never discussed, the fence was recognized as the dividing line between their properties while he lived there. He made no claim to any part of the land lying south of this fence and had no intention of buying this strip at the time he purchased the property from Greenhaw. The fence was still there when he left.

D. S. Plummer, the husband of one of appellants, who continued to reside in the home of Myra D. Brown after her death, testified to the same effect. This witness had known the property for 40 years and stated that Mrs. Brown and her heirs had the "exclusive, uninterrupted, undisputed possession of all that portion of the

lot south of the base of the terrace for the past 36 years or more.'' He also testified that he had no intention of purchasing any land from the Home Owners Loan Corporation in 1939 that extended south of the base of the terrace between the lots, or to reconvey such land to the corporation in 1941.

George W. Greenhaw testified on behalf of appellees that the ''garden spot'' was fenced when he purchased the property from Myra D. Brown in 1909. It was necessary to do some excavation to construct the house for Mrs. George Pilkington and he moved dirt from the embankment of the lot on the south side in order to fill in a part of the lot. The embankment was within the boundaries of his fence and he did not completely excavate back to the south line. Myra D. Brown was there when the lot was either measured or surveyed and witness had no trouble with her about the property line during the period of 11 years that he owned the lot.

Appellee, J. G. Shryock, testified that the house and premises were in a run-down condition when he purchased the lot in 1943. The embankment or slope of the terrace was about six or seven feet from the house on the front, but did not run parallel with the house being only three or four feet from the house at the rear and extending beyond the line of his house and into what would normally be his back yard at the west end of the lot. There were fragments of an old fence embedded in the embankment which was filled with ashes, boards, broken pieces of concrete, tin cans and other rubbish. There were a few shrubs near the line on the front of the embankment, but these were not on his property. The slope of the embankment extended about 1½ feet on his lot at the front and about 12 feet at the back, according to the survey and from the description contained in mesne conveyances from Myra D. Brown to appellees. Before beginning improvements on the south side for a driveway, Shryock took several pictures of the property in dispute which were introduced in evidence. These pictures tend to corroborate his testimony concerning

the condition and location of the embankment at that time.

Appellants rely on such cases as *Deidrich* v. *Simmons*, 75 Ark. 400, 87 S. W. 649, and *Barnett* v. *Gentry*, 117 Ark. 655, 173 S. W. 424, which hold that the proprietors of adjacent lands may by parole agreement establish an arbitrary division line, or an agreement may be inferred from long continued acquiescence and occupation according to such line, and they will be bound thereby. Appellants contend that Myra D. Brown had no intention of conveying the property in dispute to George W. Greenhaw in 1909 and that a fence between the two lots ran along the base of the embankment at that time which established an agreed boundary and has since been recognized by adjacent owners as the true line. The testimony of George W. Greenhaw tends to refute this contention, the effect of his testimony being that the fence was located upon the embankment when he purchased the property from Myra D. Brown and that the narrow strip in dispute was located upon the lot he had purchased and within the bounds of the fence as it was located at that time. The testimony of Shryock and the photographs of the property tend to corroborate Greenhaw's testimony that the fence ran upon and not at the base of the embankment. This was a sharply disputed question of fact and the testimony on behalf of appellees contradicts the testimony of appellants that an agreed boundary was established at the foot of the embankment. We cannot say that the finding of the chancellor on this issue is against the preponderance of the evidence.

Appellants' claim of title by adverse possession is subject to the general rule stated in 1 Am. Jur., Adverse Possession, § 47, p. 818: "The occupation of land by a grantor, after conveyance made, is presumed to be under, and in subordination to, the legal title held by his grantee, for he is estopped by his deed from claiming that his holding is adverse." See, also, *Graham.* v. *St. Louis I. M. & S. Ry. Co.*, 69 Ark. 562, 65 S. W. 1048, 66 S. W. 344; *Morgan* v. *McCuin*, 96 Ark. 512, 132 S. W. 459. This

presumption is, however, rebuttable and the grantor may hold adversely where his intention to do so is manifested by unequivocal acts of hostility. 1 Am. Jur., p. 819; *Turman* v. *Bell,* 54 Ark. 273, 15 S. W. 886, 26 Am. St. Rep. 35; *Davis* v. *Burford,* 197 Ark. 965, 125 S. W. 2d 789.

The same general rule is applicable where the claim of adverse possession is predicated on the possession of the parent as against the child. In 2 C. J. S., Adverse Possession, § 109, p. 661, it is said: ''As between parties sustaining parental and filial relations, the possession of the land of the one by the other is presumptively permissive or amicable, and, to make such a possession adverse, there must be some open assertion of hostile title, other than mere possession, and knowledge thereof brought home to the owner of the land.''

Appellants' claim of adverse possession is predicated on the possession of Myra D. Brown as against her daughter and son-in-law for 25 or 30 years. While two sons-in-law of Myra D. Brown testified in general terms that Mrs. Brown had open and exclusive possession of the disputed tract, there is little testimony of actual acts of occupation by Mrs. Brown. The only evidence of such acts other than the alleged maintenance of a fence at the base of the embankment, was the planting of flowers and shrubs on the disputed tract and the placing of concrete blocks on the bank to prevent washing. As against her daughter and son-in-law residing next door these acts on the part of Mrs. Brown might be considered as having been committed for the benefit of both parties and are insufficient to convert a possession that is otherwise permissive and amicable into a clear assertion of hostile title. In *DeMers* v. *Graupner,* 186 Ark. 214, 53 S. W. 2d 8, this court held (headnote 2): ''Evidence showing that an adjoining landowner mowed the grass on a small strip adjoining defendant's fence *held* insufficient to establish adverse possession where there was nothing to bring home to defendant the knowledge that plaintiff was intending to divest defendant of title by adverse occupancy''

Due to the relationship of the adverse claimants and the adjoining owners in the instant case, appellants were required to sustain their proof of adverse possession by stronger evidence than is required in ordinary cases involving the question. 1 Am. Jur. p. 819. The trial court found the proof offered by appellants on this issue insufficient to manifest an intention on the part of Myra D. Brown to hold the property in dispute adversely to the adjacent owners, and we are unable to say that this finding is against the preponderance of the testimony.

The decree is accordingly affirmed.