ROBESON *v.* HICKS.

4-8650                                    215 S. W. 2d 1017

Opinion delivered December 6, 1948.

Rehearing denied January 17, 1949.

*Joe W. McCoy* and *Edwin Cash,* for appellant.

*W. H. Glover* and *Carl Langston,* for appellee.

MINOR W. MILLWEE, Justice. This appeal involves a boundary dispute between neighbors. W. H. Clay formerly owned and resided upon a 10-acre tract of land near Malvern, Hot Spring county, Arkansas. In making certain conveyances of parts of the tract to his children in 1925, Clay deeded one acre south of his home to his daughter, Mrs. Hunter Tyler, and her husband. The Tylers built a house on their tract where they resided for several years.

In 1934, appellee, Joe Hicks, bought and took possession of a tract in the south half of the original Clay tract which embraced the one-acre parcel formerly conveyed to the Tylers. In 1935, appellant, F. D. Robeson, purchased and entered into possession of the north five acres of the Clay property lying adjacent to appellee's property.

Shortly after his purchase in 1934, appellee constructed a rock wall on his property north of his house. This wall eventually extended from his west line east for a distance of approximately 200 feet. The west end of the wall is 72 feet south of the division line between the parties established by a survey of the county surveyor. Appellee later built a meandering wire fence from the east end of the rock wall to the true east division line of the parties. The irregular shaped strip 664 feet long lying between this fence line and the surveyed line is the subject of this controversy.

Appellant instituted this suit May 21, 1946, alleging that appellee was threatening to erect a fence which

would encroach about 30 feet upon appellant's property. He alleged record ownership of the disputed strip as well as title by adverse possession and prayed that appellee be permanently restrained from erecting the fence or otherwise trespassing upon his property. Appellee answered with a general denial and alleged ownership of the disputed strip under his deeds and by adverse possession. He further alleged that he constructed the rock wall and meandering fence on his own property without any intent to establish a division line, but for other purposes which will be mentioned later.

Trial resulted in a decree dismissing the complaint of appellant and quieting appellee's title to the property in dispute. The decree recites: "The Court further finds that the defendant, Joe Hicks, after going into possession of said land by recorded warranty deed under a mete and bound description erected at his own expense a meandering fence, as shown by plat of the County Surveyor, and that said fence followed a trail made by cattle and was erected for the temporary purpose of restraining defendant's stock and that said fence is not now nor was it ever intended to be an agreed line between the plaintiff and defendant. The Court further finds that the defendant, Joe Hicks, started erecting a stone wall north of his home and that said rock wall was erected solely for defendant's convenience and to prevent water coming down hill from getting into his well and for other purposes. That said rock wall is not a dividing line between plaintiff's and defendant's [lands] nor was it ever so intended to be."

It developed at the trial that the disputed strip was not embraced in the lands described in appellant's complaint and he neither amended the complaint nor requested that the pleadings be amended to conform to the proof. However, appellee did not question the sufficiency of the complaint by demurrer or motion, and testimony on the issue of adverse possession up to the fence line was admitted without objection from appellee. This constituted an election to treat the pleadings amended so as to conform to the proof on this issue. *Rucker* v. *Martin,*

94 Ark. 365, 126 S. W. 1062; *Motor Wheel Corporation* v. *Childs,* 153 Ark. 178, 240 S. W. 417; *Thomas* v. *Spires,* 180 Ark. 671, 22 S. W. 2d 553.

Appellant contends that the chancellor's refusal to sustain his claim of title to the disputed strip by adverse possession is against the preponderance of the evidence. Since appellee established record title to the land in controversy the burden rested on appellant to sustain his claim of adverse possession by a preponderance of the evidence. *Hull* v. *Hull,* 212 Ark. 808, 205 S. W. 2d 211. It is earnestly insisted that title to the disputed strip had already vested in W. H. Clay by adverse possession, or by an agreed boundary between Clay and the Hunter Tylers, in 1934, when appellee purchased and took possession of his tract. Appellant relies on the cases of *Goodwin* v. *Garibaldi,* 83 Ark. 74, 102 S. W. 706; *Miller* v. *Fitzgerald,* 169 Ark. 376, 275 S. W. 698; and *Winter* v. *Ragan,* 192 Ark. 709, 94 S. W. 2d 362. In these cases either the adverse claimant or his predecessor in title held undisputed possession of lands enclosed by a substantial fence for a long number of years. The cases cited do not involve the claim of adverse possession by a grantor against grantees who are close relatives of the grantor. Insofar as appellant's claim of title is based on the adverse possession of W. H. Clay, his position is similar to that of the appellants in *Bellamy* v. *Shryock,* 211 Ark. 116, 199 S. W. 2d 580, where we said:

"Appellants' claim of title by adverse possession is subject to the general rule stated in 1 Am. Jur., Adverse Possession, § 47, p. 818: 'The occupation of land by a grantor, after conveyance made, is presumed to be under, and in subordination to, the legal title held by his grantee, for he is estopped by his deed from claiming that his holding is adverse.' See, also, *Graham* v. *St. Louis I. M. & S. Ry. Co.,* 69 Ark. 562, 65 S. W. 1048, 66 S. W. 344; *Morgan* v. *McCuin,* 96 Ark. 512, 132 S. W. 459. This presumption is, however, rebuttable and the grantor may hold adversely where his intention to do so is manifested by unequivocal acts of hostility. 1 Am. Jur., p. 819; *Tur-*

*man* v. *Bell,* 54 Ark. 273, 15 S. W. 886, 26 Am. St. Rep. 35; *Davis* v. *Burford,* 197 Ark. 965, 125 S. W. 2d 789.

"The same general rule is applicable where the claim of adverse possession is predicated on the possession of the parent as against the child. In 2 C. J. S., Adverse Possession, § 109, p. 661, it is said: 'As between parties sustaining parental and filial relations, the possession of the land of the one by the other is presumptively permissive or amicable, and, to make such a possession adverse, there must be some open assertion of hostile title, other than mere possession, and knowledge thereof brought home to the owner of the land.' "

Hunter Tyler testified that when he and his wife took possession of the one-acre tract deeded to them by W. H. Clay in 1925 the south side of Clay's lot fence was located on the west end of the line now marked by the wall and fence constructed by appellee; that he and his wife claimed the property south of the line marked by this fence and W. H. Clay claimed that north of the fence line. According to the testimony on behalf of appellee there was a garden and another barn lot located on the disputed strip east of the lot maintained by W. H. Clay, which were used by the Hunter Tylers while they resided on the property. Tyler admitted this, but indicated that such use was by permission of his father-in-law.

A witness who lived near the property testified that there was no cross fence between Clay and his son-in-law in 1934. There was other evidence that the strip now in dispute was used by both Clay and the Tylers while the latter resided on the acre tract which is a part of the tract now owned by appellee. The mere fact that W. H. Clay continued to use a part of the tract conveyed to his daughter and son-in-law is insufficient to change a possession that was otherwise permissive and amicable into a clear assertion of hostile title. This joint use is such as might ordinarily be expected where close family relationship exists between adjacent owners of property, and we cannot say that the chancellor's finding on this issue is against the preponderance of the evidence.

The testimony is also in dispute as to the nature of appellant's claim of adverse possession arising from the construction of the wall and fence by appellee in 1935. It is undisputed that, at the time of appellee's purchase, filth from a hog lot on appellant's property would drain downhill in appellee's yard when it rained. Appellee testified that there was no fence whatever between his property and that of appellant at that time; that Hunter Tyler indicated the approximate division line to appellee who dropped back several feet on his own land and constructed the retaining wall and meandering fence for the purposes mentioned in the decree; that he tried to persuade appellant to join with him in the erection of a substantial division fence about five years before the trial, but appellant refused; and that he warned appellant that the latter was building "mighty close to the line" when he erected a barn on the true division line in 1940, but appellant informed him that he would build his barn where he pleased.

Tom Tyler, brother of Hunter Tyler, lived near the lands and testified that he suggested the construction of the rock retaining wall and assisted in its erection for the purpose of diverting the flow of water from appellant's hog pen away from appellee's well and yard. He also assisted in the erection of the temporary meandering fence which would "zigzag" when they hit a thicket or bunch of trees. This testimony was corroborated by that of the county surveyor who surveyed the property and testified from a map he made of the lands in controversy. He and other witnesses made frequent references to unmarked points on this map by gestures which were more understandable to the chancellor who viewed the proceedings than to us in reading the record. See *Smith* v. *Magnet Cove Barium Corp.*, 212 Ark. 491, 206 S. W. 2d 442.

The surveyor also stated, and the map reflects, that both parties have all the property described in their respective deeds under the chancellor's decree. In this connection the map also shows that appellee's south fence encloses a 58-foot strip which lies without his boundaries as marked by the survey. Appellant says that appellee

may claim this strip by adverse possession and, if so, he will take 58 feet more than the maximum called for in his deeds. While this is a circumstance that should be considered in determining the intent of appellee in constructing the north wall and fence, it is not controlling; and title to the 58-foot strip is not involved in the instant suit.

While appellant testified that he claimed title to the lands north of the wall and fence erected by appellee, there is little in the way of evidence of such acts of occupation and use as would amount to notice to appellee of a hostile claim of title for the full statutory period. There was no showing that appellee ever acquiesced in a division line or that the parties agreed on the fence line as a boundary. After careful consideration of all the testimony, we conclude that the decree of the trial court is supported by the greater weight of the evidence.

Affirmed.