Filed 08/18/25

VERMONT SUPERIOR COURT
Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-00316

---

Jeffrey Kinneston et al v. Jean Raiche

---

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

This action involves a dispute over ownership of 2.6 acres of open land located off West Road in the town of Ira. Plaintiffs Jeffery and Todd Kinneston, co-executors of the estate of their late father, James Kinneston, seek a declaration that the land was properly conveyed to Plaintiffs' parents, such that when their father—having survived his wife—passed away, the land became part of their father's estate. Plaintiffs alternatively claim that, pursuant to the doctrine of adverse possession, their father's estate is the lawful owner of the premises. Plaintiffs now move for summary judgment on their claim for a declaratory judgment, and the Defendant, Jean Marie Raiche, moves for summary judgment on both of Plaintiffs' claims.

Plaintiffs are represented by Christian S. Chorba, Esq. and Christopher D. Roy, Esq. Defendant is represented by Jeffrey P. White, Esq. For reasons that follow, Defendant's motion is granted, and Plaintiffs' motion is denied, as to Count I of Plaintiffs' Complaint (declaratory judgment). Defendant's motion as to Count II of Plaintiffs' Complaint, the claim for adverse possession, is denied.

### Standard of Review

"Summary judgment is proper only where the material undisputed facts show that the moving party is entitled to judgment as a matter of law. The nonmoving party is entitled to all reasonable doubts and inferences. In determining whether there is a genuine issue of material fact, [the court] will accept as true the allegations made in opposition to the motion … so long as they are supported by affidavit or other evidentiary material." *Morisseau v. Hannaford Bros.,* 2016 VT 17, ¶ 12 (citations and quotations omitted); V.R.C.P. 56(a).

### Undisputed Facts

The following facts, except where noted, appear undisputed in the summary judgment record.

On May 15, 1986, Clarence Fish, Plaintiffs' great maternal uncle, signed a hand-written document that was entitled "Temporary Receipt and Warranty Deed." (Ex. C to Def.'s Rule 56(c)(2) Statement (June 19, 2025).) The body of that writing reads as follows:

> Know All Men by These Presents that I, Clarence C. Fish of Ira, Vermont, within County of Rutland for the consideration of $1000 Paid in full have thereby sold the section of meadow land and side hill boardering [sic.] their present property shown

on Page 58 Warranty Deed dated 6-14-78 and recorded by Town Clerk Alice Perry Ira Vermont Aug. 30, 1978.

This above mentioned property including the previously purchased property has been staked out and is in the process of being officially surveyed by Michael Engineering, Plymouth Vermont.

James L and Marie F Kinneston will bear the cost of this survey of their property.

[Signature of Clarence C. Fish]
Clarence C. Fish

Witnessed in The
Presence of    [Signature of Alice Raiche]

[Signature of James L. Kinneston]

(*Id.*)  Alice Raiche was the Town Clerk of the Town of Ira from 1981 to 1996.  (Def.'s Rule 56(c)(2) Statement, ¶ 3.)  Marie F. Kinneston, the wife of James L. Kinneston and the mother of Plaintiffs, was the niece of Clarence Fish.  (*Id.* ¶ 8.)

In August of 1986, Clarence Fish, as well as James L. Kinneston and Marie F. Kinneston, each signed a pre-printed form entitled "DEPOSIT RECEIPT AND SALES AGREEMENT."  (Ex. D to Def.'s Rule 56(c)(2) Statement.)  This document acknowledged receipt of one thousand dollars, paid by the Kinnestons as the purchase price of a property in Ira of "3 acres (more or less) southerly of the West Road, easterly of the present barns, and bordering lands of Clarence Fish and the Purchaser."  (*Id.*)  Near the very bottom of the document, directly above the signature of Clarence Fish, appears a typewritten statement:  "THE UNDERSIGNED SELLER ACKNOWLEDGES RECEIPT OF A COPY HEROF."  (*Id.*)

Both of these above-described writings—the Temporary Receipt and Warranty Deed, and the Deposit Receipt and Sales Agreement—were recorded in the land records of the Town of Ira roughly *six years* after their execution, on May 7, 1992.  (Def.'s Rule 56(c)(2) Statement, ¶ 22.)

On March 26, 1988, Clarence Fish signed a type-written document, entitled "Warranty Deed," which stated that Mr. Fish (identified as the "survivor" and "widower" of Edith B. Fish):

do[es] freely GIVE, GRANT, SELL, CONVEY AND CONFIRM unto . . .
CLARENCE C. FISH, ALICE ANN RAICHE, BEVERLY JEAN SESOW and
CAROL LOU LONG, as joint tenants with right of survivorship, and their heirs and
assigns forever, a certain piece of land in the Town of Ira, County of Rutland and State
of Vermont . . .

(Ex. B to Def.'s Rule 56(c)(2) Statement.)[1] Notably, the conveyed premises were expressly defined as excluding lands conveyed in 1978 to James and Marie Kinneston (as well as other prior conveyances of record), but made no similar exclusionary reference to any instruments or conveyances to the Kinnestons in 1986. (*Id.*) Consistent with its title, this Warranty Deed also included a covenant from the grantor to grantees, stating that the grantor had good title and right to, and was the sole owner of, the conveyed premises, and that the grantor would "warrant and defend the same against all lawful claims whatever." (*Id.*) At the very bottom of this document, below the signature denoted as "Clarence C. Fish" and two other signatures denoted as "Witness," there appeared the following:

> STATE OF VERMONT
> COUNTY OF RUTLAND, SS
>
> At Rutland, this 28th day of March 1988, CLARENCE C. FISH personally appeared, and he acknowledged this instrument, by him sealed and subscribed to be his free act and deed.
> Before me, [Signature]
> Notary Public

(*Id.*) On April 12, 1988, this Warranty Deed was recorded in the land records of the Town of Ira. (Def.'s Rule 56(c)(2) Statement, ¶ 16.)

By early September of 1997, two of the four grantees under the 1988 Warranty Deed— Clarence Fish and Alice Ann Raiche—had passed away, leaving Beverly Sesow and Carol Lou Long (Defendant's aunts) as the two surviving joint tenants. On July 7, 2000, Ms. Sesow and Ms. Long both signed a quit-claim deed, conveying the entire "Clarence Fish" parcel (as granted by him in 1988) to the Defendant, Jean Marie Raiche. (Pls.' Rule 56(c)(2) Statement, ¶ 2.)[2] That quit-claim deed was recorded in the land records of the Town of Ira on July 21, 2000. (*Id.*)

James Kinneston passed away in January of 2023, and Plaintiffs were named executors of his estate.

Analysis

I.  Plaintiffs' Count I (Declaratory Judgment Regarding Title)

The parties' cross-motions on Count I of Plaintiffs' Complaint presents a contest between competing lines of supposed legal title. Plaintiffs argue that in 1986, Clarence Fish duly granted

---

[1] The named grantees, other than Mr. Fish himself, were each the daughters of Clarence and Edith Fish. (Def.'s Rule 56(c)(2) Statement, ¶ 2.)

[2] The parties do not dispute that the quit-claim deed at least purported to convey to Defendant the 2.6 parcel of open lands that is at the center of this litigation. (*See* Pls.' Rule 56(c)(2) Statement, ¶ 2.) The parties disagree, as a legal matter, whether the quit-claim deed included the disputed parcel. (*Id.*) Plaintiffs' legal position is that the parcel had already been conveyed to James and Marie Kinneston in 1986 under the Temporary Receipt and Warranty Deed, and perhaps under the Deposit Receipt and Sales Agreement, as well.

ownership of the disputed 2.6 acres to James and Marie Kinneston under the Temporary Receipt and Warranty Deed, and perhaps as well under the Deposit Receipt and Sales Agreement. They argue that, despite the 1988 Warranty Deed *purporting* to convey the lands owned by Clarence Fish, including the 2.6 acre disputed parcel, to Clarence Fish and his three daughters as joint tenants, that parcel was not actually included in that conveyance, as it had already been conveyed to the Kinnestons under the 1986 instruments. Similarly, Plaintiffs maintain that the quit-claim deed in July of 2000, from the surviving joint tenants to Defendant, did not convey the disputed parcel to Defendant, since it had been previously conveyed to the Kinnestons under the 1986 instruments.

Defendant argues that the 1986 instruments are invalid and without effect. First, Defendant maintains that the language of the 1986 instruments shows that neither constituted a valid conveyance of real estate. Second, assuming the 1986 instruments were valid conveyances in substance, they were nonetheless invalid under a Vermont statute requiring evidence that the grantor of real property acknowledged before a qualified official that the conveyance was his free act and deed.

The Court finds, first, that there are no facts material to the adjudication of Count I that are in genuine dispute. While it may appear from Plaintiffs' Rule 56(c)(2) Statement, for example, that there are disputes as to facts, in actuality the parties are in disagreement as to the legal effect of written instruments and recordings that are not disputed.

Second, without reaching Defendant's arguments that the 1986 instruments by their terms were not deeds of conveyance, the Court concludes that they were invalid for clear lack of proof of acknowledgment by the grantor. The instruments were thus ineffective and did not give any sort of notice to the grantees under the 1988 Warranty Deed—or to Defendant as grantee under the 2000 quit-claim deed—of a prior, valid conveyance of title (regarding the parcel in dispute).

In 1986, the statute regarding conveyances of interests in real estate provided as follows:

> Deeds and other conveyances of lands, or of an estate or interest therein, shall be signed by the party granting the same and signed by two or more witnesses and acknowledged by the grantor before a town clerk, notary public, master in chancery, county clerk or judge or register of probate and recorded at length in the clerk's office of the town in which such lands lie. Such acknowledgment before a notary public shall be valid without his official seal being affixed to his signature.

27 V.S.A. § 341 (as amended by 1973, No. 249 (Adj. Sess.), § 84). The next statutory subsection, entitled "Acknowledgment and recording required," then provided as follows:

> A deed of bargain and sale, a mortgage or other conveyance of land in fee simple or for term of life, of a lease for more than one year from the making thereof shall not be effectual to hold such lands against any person but the grantor and his or her heirs, unless the deed or other conveyance is acknowledged and recorded as provided in this chapter.

27 V.S.A. § 342; *see* 2017, No. 160 (Adj. Sess.), § 3 (amending the foregoing by deleting "as provided in this chapter").[3]

These statutory provisions do not specify what particular language must be used to show that there was an acknowledgment by a grantor before an authorized official. What is plain from the statute, however, is that a grantor's mere signature on an instrument of conveyance, witnessed by two persons, is not itself proof of the grantor's acknowledgment before a statutorily designated official. A contrary reading of the statute—in which a grantor's signature and an acknowledgment before an authorized official are one and the same, or are co-extensive of each other—would render a portion of the statute surplusage. "When construing statutory provisions, we presume that the Legislature inserted [the statutory language] advisedly, and with intent that it should be given meaning and force and we will not construe the language in a way that renders a significant part of it pure surplusage." *State of Vermont Agency of Natural Resources v. Parkway Cleaners*, 2019 VT 21, ¶ 24, 209 Vt. 620 (citations and quotations omitted). Furthermore, Sections 341 and 342 appear in subchapter 2 of chapter 5 of Title 27, and subchapter 2 is entitled "Execution *and* Acknowledgment." (Emphasis added). *See State v. Hurley,* 2015 VT 46, ¶ 11, 198 Vt. 552 ("We have long held that the title of a chapter, subchapter, or section, as well as the statute's purpose, may be considered in interpreting a statute."). This title supports the conclusion that the grantor's signature or "execution" of a deed is a distinct requirement from an "acknowledgment" by the grantor before a designated official.

Further, the authorities hold that an "acknowledgment" by a grantor of real estate must in some way amount to a sworn admission or declaration, made before a qualified official, that the instrument of conveyance was signed voluntarily by the grantor, or constitutes his "free act and deed." *See* 2 *Patton & Palomar on Land Titles* § 356 (3d ed.) ("The acknowledgment of an instrument is the act of the grantor in going before an officer designated by statute and declaring that the grantor executed the instrument as a voluntary action[.]"); *Wood v. Cochrane*, 39 Vt. 544, 548 (1866) (authorized official's signed certificate, stating that a named party "acknowledged the above instrument to be his free act and deed" shows "upon its face" that party named "acknowledged the deed"); *In re Reznikov*, 548 B.R. 606, 614 (Bankr. D. Mass. 2016) ("'An acknowledgment is the formal statement of the grantor to the official authorized to take the acknowledgment that the execution of the instrument was his free act and deed.'" (quoting *McOuatt v. McOuatt*, 69 N.E.2d 806, 810 (Mass. 1946)); L.S. Tellier, Annotation, "Sufficiency of certificate of acknowledgment," 25 A.L.R.2d 1124 (1952) ("[An acknowledgment] is a public declaration by the grantor that the act evidenced by the instrument is his act and deed. The authentication of the officer consists in a certificate, generally attested by his official seal, stating in substance that the person named therein was known to and appeared before him and acknowledged the instrument to be his act and deed."). For example, the signed statement by the notary public that appears at the very bottom of the 1988 Warranty Deed constitutes proof of acknowledgment, since it states that the grantor, Clarence Fish, personally appeared and acknowledged to the notary public that the signed instrument was Mr. Fish's "free act and deed." (Ex. B to Def.'s Rule 56(c)(2) Statement.)

Here, the Temporary Receipt and the Deposit Receipt do not include (or attach) any certificate or statement, signed by a designated official, indicating that Clarence Fish personally appeared before that official and declared that his signature on either 1986 instrument was his free act and deed.

---

[3] A separate statutory subsection then provided that "conveyances of real estate, heretofore made and executed according to former laws and usages in this State, shall be valid and effectual." 27 V.S.A. § 347. Thus, the Court's inquiry focuses on whether supposed conveyances were valid according to laws that applied at the time of the supposed conveyances.

Plaintiffs argue that the signature of Alice Raiche, the Town Clerk at the time, should be deemed sufficient proof of the grantor's acknowledgment. Yet, while Alice Raiche witnessed Clarence Fish's signature, there is no signed statement or certificate from Ms. Raiche indicating that Mr. Fish affirmed to her that his signature on the Temporary Receipt was affixed *voluntarily*. *Cf. Reznikov*, 548 B.R. at 616-17 (witness affirming a grantor's signature affirms that the signature was genuine but does not attest to the voluntariness of the execution). The statute requires two witnesses *and* an acknowledgment. 27 V.S.A. § 341. The instrument simply does not contain the acknowledgment. Plaintiffs cite no cases holding that a witnessing signature made by a person who is authorized to receive an acknowledgment counts the same as that person's signed statement indicating that the grantor personally acknowledged to the official that his signature on the deed was voluntary.

Moreover, Ms. Raiche did not indicate, below or adjacent to her signature as witness, that she was signing the instrument in her capacity as the Town Clerk of Ira. That further confirms that Ms. Raiche's signature alone does not suffice as proof that the grantor acknowledged to a designated official that his signature on the deed was his own free act. After all, a title examiner is not presumed to know that a signature of "Alice Raiche," without any notation of her office or capacity, was a signature by one of the officials designated under 27 V.S.A. § 341 to receive a grantor's acknowledgment. That she was Town Clerk in 1986 is not disputed today, but that does not suffice to show that her signature was alone proof of a grantor's acknowledgment to an official authorized to receive such an acknowledgment.

This clear lack of acknowledgment makes the 1986 instruments invalid and insufficient to provide notice of prior title to subsequent purchasers. "It is black letter law in Vermont that an unacknowledged deed can have no effect but as an agreement between the parties." *In re Davis*, 109 B.R. 633, 638 (Bankr. D. Vt. 1989) (citing *Vt. Accident Ins. Co. v. Fletcher & Fletcher*, 87 Vt. 394, 397 (1914)); *see Lakeview Farm, Inc. v. Enman*, 166 Vt. 158, 164 (1997) ("A deed that is improperly witnessed and acknowledged is invalid." (citing *Day v. Adams*, 42 Vt. 510, 515 (1869)); *Pennock v. Goodrich*, 104 Vt. 134, 139 (1932) (unacknowledged deed is not constructive notice to subsequent purchasers of prior title); *Patton & Palomar* § 356 ("If the acknowledgment is lacking or is invalid, the record is an insufficient link in the chain of title, unless it has been legalized by a curative act, because, with few exceptions, it does not constitute constructive notice[.]"); *In re Warner*, No. 5:11-cv-105, 2011 WL 2711422, at *3 (D. Vt. Jul. 12, 2011) (same, citing *inter alia, Patton & Palomar* § 356); *Wood*, 39 Vt. at 549-50.

This means that the grantees under the 1988 Warranty Deed, and Defendant as the grantee under the 2000 quit-claim deed, were purchasers without constructive notice of any prior title. Stated differently, the supposed deeds from 1986, because they were unacknowledged, were not "effectual to hold such lands [purportedly conveyed by them] against any person but the grantor and his heirs." 27 V.S.A. § 342. Further, the six-year delay in the recording of the 1986 instruments does not appear especially pertinent, since a more timely recording (in 1986, for example) would only have revealed to a title examiner in 1988 a recorded document that was clearly missing an acknowledgment, and was therefore invalid as prior title. By that same logic, when Defendant took title under the quit-claim deed in July of 2000, her title search at that time could only have discovered the 1986 instruments that were unacknowledged, therefore invalid and ineffectual as prior title.[4]

---

[4] Plaintiffs allege, without admissible evidence in support, that Alice Raiche as Town Clerk deliberately refused to record the 1986 instruments for six years, before finally recording them in May

Plaintiffs argue in the alternative that, even assuming the 1986 instruments were unacknowledged, they nonetheless are effectual against Defendant's supposed title, since 27 V.S.A. § 342 recognizes that unacknowledged conveyances are still effectual against claims to title that are asserted by "the grantor and his heirs." Yet, Defendant did not take her title to the disputed parcel by or through any inheritance from Clarence Fish, or any other person. Defendant may be a successor in interest or successor in title, to title owned previously by Mr. Fish, but she is not his heir, as contemplated by Section 342. Indeed, this litigation is certainly not a dispute between the original parties to the 1986 instruments, or their respective heirs. Plaintiffs, as heirs to the supposed grantees under the 1986 instruments, are claiming title not as against the grantor (Clarence Fish), or anyone claiming title as a result of an inheritance of the disputed parcel from Mr. Fish. Rather, Plaintiffs are asserting title as against subsequent *other* purchasers, such as Defendant. Accordingly, the exception in Section 342 does not apply here.

Plaintiffs also claim that their title is now valid, by dint of a curative statute, 27 V.S.A. § 348(a), that was enacted in 1977. That statute provides as follows:

> When an instrument of writing shall have been on record in the office of the clerk in the proper town for a period of 15 years, and there is a defect in the instrument because it . . . was not sealed, witnessed, acknowledged, [or] validly acknowledged, . . . the instrument shall, from and after the expiration of 15 years from the filing thereof for record, be valid.

Plaintiffs observe that the 1986 instruments were recorded in 1992, which means that with the passage of 15 years, the defect of their missing acknowledgment was fully cured, in 2007. This argument, however, ignores that the statutory cure only takes effect "*from and after* the expiration of 15 years from the filing thereof for record," not before. 27 V.S.A. § 348(a) (emphasis added). The statute does not apply retroactively. *Cf. 2 Patton & Palomar on Land Titles* § 366 (3d ed.) ("So long as their intent to apply retroactively is clear, [curative acts] may be so applied.").

Thus, until 2007, the 1986 instruments remained invalid as unacknowledged. They were of record beginning in 1992, but were insufficient to give good faith purchasers before 2007 any notice of prior title. Indeed, even assuming that the 1986 instruments had been recorded in May or August of that year, their missing acknowledgments would not have been statutorily cured until 2001, which is still a year after the July 2000 quit-claim deed to Defendant. Accordingly, the curative statute does not give Plaintiffs valid, prior title, as against the claims to title asserted by Defendant.

For these reasons, the Defendant is entitled to judgment on this claim, and Plaintiffs are not entitled to judgment.

II. <u>Count Two (Plaintiffs' Adverse Possession Claim)</u>

Plaintiffs also assert that they have legal title to the disputed parcel under the doctrine of adverse possession. "To achieve title through adverse possession, the claimant must demonstrate that possession of the land was open, notorious, hostile, and continuous throughout [a] statutory fifteen-

---

of 1992. Even granting that allegation as true, it does not fix the defect that was apparent because of the missing acknowledgment.

year period." *Old R.R. Bed, LLC v. Marcus*, 2014 VT 23, ¶ 24, 196 Vt. 74; *see* 12 V.S.A. § 501 (establishing 15-year period, after claim first accrues, for a party to assert claim for recovery or possession of lands). "The use or possession must be so substantial as to put an ordinary owner on notice of the adverse possessor's claim to absolute dominion over the property." *Id.* As noted by the Vermont Supreme Court, the adverse possessor "must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest." *Barrell v. Renehan*, 114 Vt. 23, 29 (1944).[5]

Notably, however, "[i]t is presumed that the use of the land by one who has record title is the exercise of his right to enjoy it, and such use interrupts the continuity of adverse possession by another." *Harlow v. Miller*, 147 Vt. 480, 483 (1986). In *Harlow*, the record owner's son effectively "negated" the plaintiff's claim when he "maintained the area in question by mowing the grass periodically" during the supposed fifteen-year period of adverse possession claimed by the plaintiff, *Id.*; *see also Camp v. Camp*, 88 Vt. 119, 120 (1914) (maintenance of flower garden on lands held by record owner "work[s] an interruption in the running of the Statute of Limitations"); *Earl v. Griffith*, 52 Vt. 415, 420-21 (1880) (periodic cutting and removal of logs by record owner were acts of "actual possession of the true owner of title" that "effectually interrupted" period of claimed adverse possession by others).

This presumption of interruption is subject to rebuttal. If the record owner does not enter with an assertion of a claim as owner, with intent to take possession, and with such notoriety that the adverse possessor would have reason to take action to vindicate his rights, the continuous running of the 15-year period of possession may not be interrupted. *See Johnston v. Fitzgeorge*, 14 A. 762, 763-64 (N.J. 1888) (cited favorably by *D'Orazio v. Pashby*, 102 Vt. 480, 486 (1930)), *abrogated on other grounds by J & M Land Co. v. First Union Nat'l Bank*, 766 A.2d 1110 (N.J. 2001); *Barrell*, 114 Vt. at 31 (there is no interruption in the period of adverse possession if it could be inferred "that [the record

---

[5] Defendant maintains that the claimant's evidentiary burden is even greater if the claimant and the holder of record title are members of the same "family." Def.'s Mot. for Summ. J. at 14. The Court is not convinced. That heavier burden of proof, or a presumption of permissive and amicable use, only arises where the two parties in dispute are parent and child, or where the parties are in another close family relationship. *See* 4 *Tiffany Real Property* § 1189 (3d ed.) (citing cases from several jurisdictions, including *Harlow v. Miller*, 147 Vt. 480 (1986)); *Harlow*, 147 Vt. at 484 (applying presumption of permissive and amical use against son who asserted adverse possession of lands owned by his parents); *Bellamy v. Shryock*, 199 S.W.2d 580, 583 (Ark. 1947) (applying presumption against mother's claim of adverse possession against her daughter and son-in-law), *cited favorably by Harlow*, 147 Vt. 484. Here, the parties and their predecessors are first cousins once removed (or second cousins), since James Kinneston was the husband of Clarence Fish's niece, and Defendant is the maternal granddaughter of Clarence Fish, and she acquired the property by deed from her two aunts, not by inheritance. While in *Ransom v. Bebernitz*, 172 Vt. 423, 432 (2001), the Court cited the presumption identified in *Harlow* when reviewing a claim of adverse possession by and between apparent first cousins who held joint title as tenants in common, the Court went on to cite and rely upon the standard the must be met to prove an ouster by one co-tenant against another. *Ransom* is thus not controlling. *See also* 4 *Tiffany Real Property* § 1190.1 (3d ed.) (citing relatively few cases that give any presumption or alter the burden of proof in the case of adverse possession claims between other family relations); *Nordin v. Kuno*, 287 N.W.2d 923, 927 (Minn. 1980) (relationship of first cousins once removed insufficient to infer that use of disputed lands was permissive).

owner's] use of it was casual and consistent with . . . a claim of ownership [by party claiming adverse possession]").

Here, there is no dispute that after Ms. Raiche took record title to the disputed parcel, she regularly had the disputed parcel hayed and mowed. (*See* Pls.' Rule 56(c)(2) Statement, ¶ 40 (quoting at length the deposition transcript of Jeffrey Kinneston)). Plaintiff Jeffrey Kinneston testified that he personally observed that the open 2.6 acres was hayed and mowed for decades. (*Id.*) Yet, there is a genuine dispute as to whether Defendant's activities were under a claim of right, or was by permission from James Kinneston. Ms. Raiche maintained under oath that she never needed the Kinnestons' permission, never asked for their permission, and never received their permission. (Aff. of Jean Marie Raiche (filed May 21, 2025), ¶¶ 18-19.) Plaintiffs claim, to the contrary, that the mowing and haying was always by the permission of Mr. Kinneston. (*See* Pls.' Rule 56(c)(2) Statement, ¶ 40 (citing deposition of Jeffrey Kinneston); Pls.' Opp'n to Def.'s Mot. for Summ. J. at 8-9.)[6] Further, they assert that the haying and mowing by Defendant benefitted both the Kinnestons and Defendant, since the Kinnestons would not have to hire someone else to maintain the parcel, and Defendant could presumably "take advantage of the hay." (Pls.' Rule 56(c)(2) Statement, ¶ 40; Pls.' Opp'n to Def.'s Mot. for Summ. J. at 9.) Accepting as true Plaintiffs' factual claims, a reasonable fact-finder may well infer that Defendant's haying and mowing activities were not taken as of right or with an intention to assert possession, and that such activities were consistent with Plaintiffs' claims of ownership by adverse possession. As such, there are genuine material facts in dispute, and summary judgment is not appropriate.

Defendant also alleges other uses of the parcel, besides mowing and haying, and she alleges that all uses of the parcel by the Kinnestons was with her express permission. However, these allegations are also genuinely disputed by evidence proffered by the Plaintiffs.

Conclusion

---

[6] Citing V.R.C.P. 30(e), Defendant asserts that the deposition transcripts relied upon by Plaintiffs are unsigned by the witnesses, and as such, cannot be considered admissible evidence for purposes of Rule 56 motions. *See* Def.'s Reply to Pls.' Opp'n to Def.'s Mot. for Summ. J. (July 21, 2025), at 2-3. Rule 30(e), however, does not provide that a deposition transcript that is unsigned by the witness is inadmissible or may not be used as evidence. Rather, the Rule provides that if the witness does not sign a copy of the deposition transcript within 30 days of its submission to the witness by the officer before whom the deposition was taken, "the officer shall sign it and state on the record . . . the fact of the refusal to sign together with the reason, if any, given therefor[.]" V.R.C.P. 30(e). Defendant thus apparently claims that the officer (a notary public/court reporter) failed to carry out this act of signing a deposition that was unsigned by the witness, and that that omission or error renders the depositions inadmissible. But such an error by the officer is "waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with diligence might have been, ascertained." V.R.C.P. 32(d)(4). Here, both of the depositions of Todd and Jeffrey Kinneston were apparently taken on December 27, 2024. (Def.'s Ex. A to Reply Mem.) Defendant has not filed a motion to suppress under V.R.C.P. 32(d)(4), based on an error by the officer under Rule 30. The Court thus concludes that the error of the officer has been waived, at least for purposes of the adjudication of the parties' motions for summary judgment. *See Atwood v. Kerr*, 136 Vt. 515, 516 (1978) ("The defendant has waived these technical defects [specified in V.R.C.P. 32(d)(4)] by his failure to file a motion to suppress as required by rule."). This waiver does not, however, necessarily preclude a motion to suppress filed by Defendant for purposes of trial.

For the foregoing reasons, Plaintiffs' motion for summary judgment on Count I of their Complaint is DENIED. Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The motion is granted as to Count I of Plaintiffs' Complaint, and denied as to Count II.

Electronically signed on August 14, 2025 pursuant to V.R.E.F. 9(d)

_Alexander N. Burke_
_____
Alexander N. Burke
Superior Court Judge